IN THE UNITED STATES COURT OF APPEALS
TENTH CIRCUIT

APPEAL NO. 17-3105

BETTY L. McDERMED, Deceased, et al.,     )
            Plaintiffs/Appellants,     )
                               )
       vs.                      )
                               )
FORD MOTOR COMPANY,     )
            Defendant/Appellant.     )
                               )

Appeal from the United States District Court
for the District of Kansas at Kansas City, Kansas

The Honorable Carlos Murguia, U.S. District Judge
District Docket Case No.: 2:14-cv-02430-CM

## **BRIEF OF APPELLANTS**

**ORAL ARGUMENT IS REQUESTED**
**THIS BRIEF CONTAINS ATTACHMENTS IN DIGITAL FORM**

Respectfully submitted,

Eric Kjorlie, KS #08065
Kjorlie Law Office
Historic Tinkham Veale Place
827 SW Topeka Blvd.
Topeka, KS 66612-1608
(785)232-6868 (O); (785)232-6878 (F)
kjorlielaw@sbcglobal.net
Counsel for Plaintiffs/Appellants

IN THE UNITED STATES COURT OF APPEALS
TENTH CIRCUIT

APPEAL NO. 17-3105

BETTY L. McDERMED, Deceased, et al.,       )
               Plaintiffs/Appellants,       )
                                   )
        vs.       )
                                   )
FORD MOTOR COMPANY,       )
               Defendant/Appellant.       )
_____)

---

Appeal from the United States District Court
for the District of Kansas at Kansas City, Kansas

The Honorable Carlos Murguia, U.S. District Judge
District Docket Case No.: 2:14-cv-02430-CM

---

# <u>BRIEF OF APPELLANTS</u>

**ORAL ARGUMENT IS REQUESTED**
**THIS BRIEF CONTAINS ATTACHMENTS IN DIGITAL FORM**

Respectfully submitted,

Eric Kjorlie, KS #08065
Kjorlie Law Office
Historic Tinkham Veale Place
827 SW Topeka Blvd.
Topeka, KS 66612-1608
(785)232-6868 (O); (785)232-6878 (F)
kjorlielaw@sbcglobal.net
Counsel for Plaintiffs/Appellants

## CERTIFICATE OF INTERESTED PERSONS

I certify that the following individuals may have an interest in the outcome of this case. I make these representations in order that the members of this Court may evaluate possible disqualification or recusal.

| | |
|---|---|
| **District Judge:** | The Honorable Carlos Murguia |
| **Appellants:** | Estate of Betty L. McDermed/<br>Diane L. McDermed, Administrator<br>Paul C. McDermed<br>Georgia Lee Iocco |
| **Appellants' Counsel:** | Eric Kjorlie |
| **Appellee:** | Ford Motor Company,<br>A Delaware Corporation |
| **Appellees' Counsel:** | Rodney E. Loomer<br>Sherry A. Rozell<br>Steven E. Ward<br>Ben K. Upp |

## <u>PRIOR OR RELATED APPEALS</u>

There have been no prior or related appeals.

## RULE 32(a)(7) CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. of App. P. 32(a)(7)(C), I, Eric Kjorlie, Counsel for the Plaintiffs, hereby certify that the Appellants' Brief, is in conformity with this Rule as required to type-volume limitation containing no more than 14,000 words.  I relied upon Microsoft Word to obtain the count and it is 13,862 words, and pursuant to 10th Circuit's Rule Cir. R. 32.1, the text of Appellant's Brief is 13 pt. type permitted by Fed. R. App. P. 32 (a)(5)(A).  I certify that the information of this form is true and correct to the best of my knowledge and belief formed after reasonable inquiry.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES................................................. i

PRIOR OR RELATED APPEALS ............................................................. ii

RULE 32(a) (7) CERTIFICATE OF COMPLIANCE ........................iii

CERTIFICATE OF DIGITAL SUBMISSION ............................50-51

TABLE OF AUTHORITIES.......... .................................,....iv

APPENDIX ADDENDUM/SUPPLEMENTAL ATTACHEMENTS
TO BRIEF.....................................................................51

I. PLAINTIFFS'/APPELLANTS' INTRODUCTION/OVERVIEW
OF ISSUES RAISED IN THE INSTANT APPEAL/ STATEMENT
OF UNDERSTANDING CONCERNING JOINT APPENDIX.................1

II. STATEMENT OF ISSUES PRESENTED FOR REVIEW...................7

I.    Because the 10th Circuit in *Rimbert v. Lilly*, 647 F.3d 1247 (10th Cir. 2011) has
      determined that Daubert Motions in excluding expert testimony in the
      context of products liability cases are "dispositive" rather than as alleged by
      the Defendant Ford Motor Company as being "non-dispositive; pursuant to
      Fed. R. Civ. P. 6(b) and D. Kan. Rule 6.1(d)(2), a party's response time for
      filing and serving of Responses is 21-days and a party's response time for
      filing and serving of Replies is 14-days.  The timing rules for both the 14-day
      ("non-dispositional" motion) and 21-day ("dispositional" motion) rules
      pursuant to Fed. R. Civ. P. 6(b) and D. Kan. Rule 6.1(d)(1) and (2), are
      clearly jurisdictional and not procedural. Because Plaintiffs' Counsel's
      Motion to extend their Response time to was made within the 21-day
      exclusion period the Trial Court's refusal to rule on the substantive issues
      raised in this products liability wrongful death action requires remand to
      protect Plaintiffs' rights under the protections afforded them under
      Summary Judgement standards pursuant to Fed. R. Civ. P. 56....25

II.   The 10th Circuit should follow the lead of the 6th and 2nd Circuits in
      providing remedial relief to litigants in federal court to avoid the pitfalls or
      dilemmas as shown in this Record for repeatedly filling motions in limine to
      strike Plaintiff's proofs under the guise of prejudice for Plaintiffs' late

disclosures. Such "motions in limine/motions to strike" as apparent in this Record are becoming consistently disfavored and the Defendant Ford has previously been admonished for utilizing this trial strategy by the Sixth Circuit in *Louzon v. Ford Motor Co.*, 718 F.3d 556 (6th Cir. 2013) that the mislabeling and attributing such "motions in limine" as the instant Daubert Motions as being "non-dispositive" is improper and must allow plaintiffs the procedural and substantive rights they are entitled under Summary Judgement standards pursuant to Fed. R. Civ. P. 56. The State of California has further taken the lead by enacting effective in 2016 Calif. Code of Civ. Pro. §437c which provides relief to litigants from dispositive motions disguised as motions in limine by reinforcing the protections by developing procedural protections/safeguards for dispositive motions no matter how labeled. ...............................................................................31

III.    Plaintiffs further respectfully submit on appeal that any implication suggested by the Defendant Ford that it has presently established a requisite record that Ford has suffered prejudice on the instant Record concerning the issue of the late filings of Plaintiffs' disclosures, is not factually supported and/or are of such deminimus in nature on the instant Record, that the District Court's imposition of the harsh penalty of its rulings resulting in the dismissal of Plaintiffs' lawsuit is not of a character to satisfy the Gorsuch "gimlet eye" test or standard to absolve the Court from exercising its jurisdictional responsibilities to rule on Plaintiff's substantive issues raised in both its defenses to Ford's Daubert Motions to Exclude the Testimony of Plaintiff's Designated Experts; but further to show that as a matter of law that material fact controversy exists in denying Ford's Motion for Summary Judgement entitling the Plaintiffs their day in Court to prove up their wrongful death products liability action to the Jury.    The 10th Circuit should remand to the Trial Court for decision concerning the issue of sanctions of the Plaintiffs'/Appellants' Counsel on the issue of his filing late disclosures, and to be so guided within the context of rulings determined within the context of this Record on Appeal......................................40

III. STATEMENT OF JURISDICTION......................................................9

IV. APPELLANT'S FACTUAL CONTENTIONS ...........................9

V. ARGUMENTS AND AUTHORITIES ......................................25

VI. CONCLUSION ...............................................................49

VII. STATEMENT REGARDING ORAL ARGUMENT ....................49

CERTIFICATE OF SERVICE AND DIGITAL SUBMISSION.............50

## **APPENDIX ADDENDUM/SUPPLEMENTAL ATTACHEMENTS TO BRIEF**

1. Memorandum and Order (Doc. 169), filed 08/03/2016 granting Defendant's Daubert Motions and denying Plaintiffs' Motion for Leave for Additional Time to Respond to Defendant's Daubert Motions.

2. Memorandum and Order (Doc. 170), filed 08/03/2016 granting Defendant's Motion for Summary Judgment

3. Memorandum and Order (Doc. 180), filed 04/26/2017 denying Plaintiffs' Rule 59(e)Motion to Reconsider and  Plaintiffs' Rule 60(b) Motion New Trial

4. Exhibit "D"- *"Local DCR 3.211 (Expert Witnesses)"*.

5. Exhibit "E"- *"The Time-Tested Use of Ex Parte Communications: Interviewing a Plaintiffs Health Care Providers as a Vital Means of Discovery"*, Steadman, Kyle J., KADC Defense Journal, Winter 2009.

## **TABLE OF AUTHORITIES**

**CASES:**

*Adams v. Anderson*, 12 Fed. Appx. 910, 914 (10th Cir. 2001)...................26

*Ashby v. McKenna*, 331 F.3d 1148, 1149 (10th Cir. 2003).................28,32,41

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009)................................................43

*Arbaugh* v. *Y & H Corp.*, 546 U. S. 500, 514 (2006)...........................28

*Been, et al. v. O.K. Industries, Inc., et al.,* No.08-7078
(10th Cir. 2010)......................................................................6

*Board of Sedgwick County Comm'rs v. City of Park City*, 293
Kan. 107, 260 P.3d 387 (2011)................................................28,36

Branham v. Thomas M. Cooley Law Sch., 689 F.3d 558, 562
(6th Cir. 2012)...................................................................27

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)..........................43.44

*Brumark Corp. v. Samson Resources Corp.* 57   F. 3d 941, 948
 (10th Cir. 1995))...............................................................26

*Bowles v. Russell*, 551 U.S. 205, 212–13 (2007)..................................30

*Cargle v. Mullin*, 317 F.3d 1196, (10th Cir. 2003) ...............................19

*Chelf v. State*, 46 Kan. App. 2d 522,529, 263 P.3d 852 (2011).....................28

*Cummings v. General Motors Corporation*, 365 F. 3d 944 (10th Cir. 2004)..........15

*DeLeon v. Marcos*,659 F.3d 1276, 1280-81 (10th Cir. 2011).......................31

*Dutcher I*, 733 F.3d at 984 (quoting *Rural Water Dist. No. 2 v.*
*City of Glenpool*, 698 F.3d 1270, 1274 (10th Cir. 2012))...........................25

*Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.,* (10th Cir. 2007)..............26

*Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir.1992)..............................43

Evans v. Sir Pizza of Kentucky, Inc., 476 Fed. Appx. 605, 608
(6th    Cir.2012)..................................................................26

*Esposito v. Home Depot U.S.A., Inc.*, 590 F.3d 72, 78 (1st Cir.2009)..............45

*Gripe v. City of Enid, Okla.*, 312 F.3d 1184, 1188 (10th Cir.
2002)..........................................................................27,31,41,48

*Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160
 (10th Cir. 1999))..............................................................25

*Hinkle v. Ford Motor Company*, No. 3:11–24–DCR, 2012 WL
 5868899 (E.D. Ky. Nov. 20, 2012) ...........................................15

**vii**

*In re: American Medical Systems, Inc. v. Pelvic Repair Systems Products Liability litigation*, MDL NO. 2325 ..............................38
*In re Countrywide Fin. Corp. Mortg. Lending    Practices Litig.)*,
708 F.3d 704, 707 (6th Cir. 2013) ... ... ... ... ... ... ... ... ... ... ... ... ... ... ...27

*Lee v. Max International, LLC*, 638 F. 3d 1318 (10th Cir. 2011) ...................42

*Louzon v. Ford Motor Co.*, 718 F.3d 556 (6th Cir. 2013) ...................4, 8,32,36

*Lyons v. Dept. of Corr.*, 12 Fed. Appx. 772,773 (10th Cir. 2001) .................26

*Maiorana v. U. S. Mineral Products Co.*, 52 F. 3d 1124,
1131-32 (CA 2, 1995) ...................................................................39

*McEwen v. City of Norman, Okla.*, 926 F.2d 1539,
1553-54 (10th Cir. 1991) ...................................................... 27,32,41

*Morel v. Daimler-Chrysler Corp.*, 259 F.R.D.17,20 (D.P.R. 2009) ...............46

*Nasious v. Two Unknown B. I. C. E. Agents*, No. 07-1105,
__ F.3d __, 2007 WL 1895877 (10th Cir. 2007) ..............................27,31,41

*Pioneer Inv. Services v. Brunswick Assocs.*, 507 U.S. 380 (1993) ............ ....3,48

*Rimbert v. Lilly*, 647 F.3d 1247 (10th Cir. 2011) .................................8, 29,35

*Rural Water Dist. No. 2 v. City of Glenpool*,
698 F.3d 1270, 1274 (10th Cir. 2012) ...............................................25

*Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012(10th Cir. 2000)
(citing *Van Skiver*, 952 F. 2d at 1243) .............................................26

*Schlussler-Womak v. Chickasaw Tech Prod.*, 116 Fed.
Appx. 772,773 (10th Cir. 2004) (unpublished) .......................................26

*Tal v. Harth*, No. 14-6205 (10th Cir. 2015) (unpublished) .......................... 31

*The Proctor& Gamble Company v. Haugen*, 427 F. 3d 727
(10th Cir. 2005) .......................................................................42,48

United States v. Bailey, 444 U.S. 394,
412 n. 9, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980) ....................................38

**viii**

*United States* v. *Cotton*, 535 U. S. 625, 630 (2002)…………………………….28

*United States ex rel. Haight v. Catholic Healthcare West*,
602 F.3d 949 (9th Cir. 2010)……………………………………………………...30

*Watkins v. Leyba*, 543 F.3d624, 627 (10th Cir.2008)…………………………......31

*Williams v. Johnson,* 747 F.Supp.2d 10, 14 (D.D.C.2010)……………………....39

## RULES:

Local DCR 3.211……………………………………………...11& App. "D"

D. Kan. Rule 6.1(d)(1) and (2)…………………………………………...29,35,36

Rule 41(b)…………………………………………………………………......4

## STATUTES:

Fed. R. App. P. 4(a)(4)(A)…………………………………………….......9

Fed. R. Civ. P. 6(b)………………………………………………….29,35,36

28 U.S.C. §1291……………………………………………….......................7

Fed. R. Civ. P. 26(a) …………………………………………………….44

Fed. R. Civ. P 26(2)(A)…….…………………………………………......17

Rule 37(c)(1)(C)……………………………………………………….45

Fed. R. Civ. P. Rule 54…………………………………………………......32

2016 Calif. Code of Civ. Pro. §437c……………………………….……...8

## TREATISES:

1. *The Case Against Dispositive Motions in Limine, Part 1 and 2"*, Ritchie,

Solange E., the Gavel, published by the Orange County Trial Lawyers
Association, Volume 14, Number 4, (Fall 2011) and Volume 15, Number
1 (Spring 2012).  …………………………………………………………..4,38

2. *"The Time-Tested Use of Ex Parte Communications: Interviewing
a Plaintiffs Health Care Providers as a Vital Means of Discovery"*,
Steadman, Kyle J., KADC Defense Journal, Winter 2009……………..11& App. "E"

3. 21 WRIGHT & GRAHAM, *supra*, § 5037.10…………………………….…..32

# I.

## PLAINTIFFS'/APPELLANTS' INTRODUCTION/ OVERVIEW OF ISSUES RAISED IN THE INSTANT APPEAL/ STATEMENT OF UNDERSTANDING CONCERNING JOINT APPENDIX

### Overview

In loyal deference to, and with unwavering due respect for both the Honorable U.S. District Court of Kansas and this Honorable 10th Circuit Court of Appeals, and mindful of the log jam created by the Plaintiffs'/Appellants' Counsel's in making untimely disclosures for which the Record on Appeal clearly demonstrates, Plaintiffs'/Appellants' Counsel respectfully submits that none of the Plaintiffs have acted in any manner to frustrate or hinder, or acted in any manner to cause, or were complicit in any manner in causing their Counsel's admitted late disclosures which provided a green light to the Defendant/Appellee whether rightly or wrongly to file its Motions to Strike; and that Plaintiff's Counsel attempted in good faith to either ameliorate the harm of his late disclosures fairly determined by the Magistrate and/or as the case may be, of aggressively defending against baseless claims of actual prejudice suffered as a result of late disclosures against what this Record on Appeal is believed to reveal and to be determined bad faith attempts to gut material facts of causation for the sole purpose of tying the hands of Plaintiffs/Appellants retained experts from providing their opinions of either causation or Defendant's/Appellee's product failure. Unlike *Lee v. Max International, LCC* the Plaintiffs/Appellants believe

1

the Record on Appeal will reveal that their Counsel responded to the best of his ability to defend the assertions of actual prejudice/ contained within Defendant's/ Appellee's two(2) Motions to Strike, and that they dutifully responded in meeting the stringent timelines set out in the Magistrate's corrective orders in its rulings on Defendant's/ Appellee's Motions to Strike; and that this Honorable Tenth Circuit Court of Appeals determine that the instant appeal affords the Appellate Court to issue rulings to protect litigants within the Circuit from either abusive Motion practice discouraged by the 6th Circuit Court of Appeals; or act as a vehicle to further admonish responsible counsel to comply with the good faith disclosure requirements set out in Fed. R. Civ. P. 26(a). Plaintiffs/ Appellants assert in their appeal that the Defendant's/Appellee's Motions to Strike were filed for no other purpose than to exclude relevant material fact evidence upon which Plaintiffs' experts relied in forming their opinions of either product failure or pattern of injury which Plaintiffs/Appellants allege were the result of the injuries leading to the death of the Plaintiff Betty L. McDermed.

In taking their appeal, the Plaintiffs/ Appellants request on their Issue II that the Panel determine whether or not that the intended quagmire that resulted from their Counsel's late disclosures which placed an obvious extreme hardship imposed on the Magistrate, and the District Judge, were a direct result of the Defendant's/ Appellee's bad faith filing alleging prejudice required before a party files a Motion to Strike which as shown on this Record of Appeal such averments constituted a fraud on the court as a matter of law, or constitute abusive discovery

2

practice.  Plaintiffs/ Appellants urge the Appellate Court to apply the Honorable

Justice Neil Gorsuch's "gimlet eye" test of *Lee v. Max International, LCC*  on the

premise that "what is good for the goose is good for the gander" to then determine

whether or not there was discovery abuse, determine whom should be held

accountable, and  impose within its supervisory power to do so, to provide a

measured remedy which will not result in the "death-penalty" of a dismissal as

punishment by determining that the element of the discovery "crime" of willfully

disregarding scheduling rules resulting in excessive time restraints to controvert

unsubstantiated claims of prejudice in the Defendant's/Appellee's filing of  their

Motions to Strike is unavailing to the Defendant/Appellee,  and if so determined to

impose a lesser penalty against Plaintiffs'/Appellants' Counsel for what discovery

"crime" which is determined to be evidenced in the instant Record on Appeal and

to be  assessed rightfully for, if any, which may be available to the Plaintiffs/

Appellants that may "as a matter of justice in the individual case and to deter

[others] who might be tempted to [similar] conduct, and should be predicated on

"willfulness, bad faith, or [some] fault'" rather than just a simple "inability to

comply. …"[or other sufficient reason other than rewarding  the "harmed party"

having been complicent  in committing discovery abuse/fraud on the court].

Justice Sandra Day O'Conner in *Pioneer Inv. Servs. v. Brunswick Assocs.,* 507

U.S. 380 (1993) suggested remanding the case there  back to the Trial Court to

provide a hearing for a litigant's Counsel the opportunity to provide the Trial

Court evidence for it or the Panel's consideration of  either Counsel's inability to

3

comply in good faith or contemptuous disregard of the duty to disclose required of
Fed. R. Civ. P. 26(a); and/or to show mitigating circumstances such as an expert
not being able to electronically submit the journals to be made a part of his Report
of his primary source materials in a filed format as one instance requiring a four
(4) day turnaround delay or their Counsel's press of other briefing/discovery
scheduling inherent in the instant case itself, as possible considerations including
the obvious necessity of adverse party's counsel being required to act in good faith
required by Fed. R. Civ. P. 26(a) in filing a Motion to Strike for prejudice other
than for other purpose.

　　　Plaintiffs'/Appellants' Issue II on appeal requests that the Panel consider
and rule that the 10th Circuit by adopting the 6th Circuit's Decision of *Louzon v.
Ford Motor Co.*, 718 F.3d 556 (6th Cir. 2013) admonition; and mindful of the
state's courts practice such as was statutorily enacted by the State of California in
its Code of Civil Procedure California's Revision enacting effective in 2016 Calif.
Code of Civ. Pro. §437c for the stated purpose of avoiding disruption to the
litigants and the courts protecting litigants (and the Court) from sharp motion
practice believed present or evident in this Appellate Court's supervisory review.
See *"The Case Against Dispositive Motions in Limine, Part 1 and 2"*, Ritchie,
Solange E., the Gavel, published by the Orange County Trial Lawyers
Association, Volume 14, Number 4, (Fall 2011) and Volume 15, Number 1
(Spring 2012). Factors may also be included in its determinations that these
supervisory considerations be considered on the question of the Record on Appeal

4

to the extent not of the quality or degree to permit a dismissal as the sanction for

Plaintiffs' Counsel's delay in filing their Supplemental Disclosures eight (8) days

late in what the Magistrate has determined to be the deminimus prejudice to the

Defendant however burdensome to the Court for being required to deal with the

Defendant's claims of prejudice suffered by reason of the late disclosure which

purpose was to prevent facts to be preserved for the factfinder to be able to

determine the case on its merits; whether the delay was corrected by the

Plaintiffs/Appellants dutifully complying with the Magistrate's deadlines imposed

for compliance over the refilming of the "pull test" to the shoulder harness belting

recommended in the Defendant's/ Appellee's Owner Manual; and the taking of the

Deposition of one of Plaintiff Betty L. McDermed's treating physicians

notwithstanding the fact that that Plaintiffs/Appellants had identified and

disclosed to Defendant's/Appellee's Counsel their identities for the Defendant to

conduct a full and independent investigation of the claim as early as two weeks

after the filing of Plaintiff's Complaint.  The question of actual disclosure which

were voluntarily incorporated by the Plaintiffs and their Counsel, as opposed to

the filing their disclosers solely under the Scheduling Order should be assessed by

the Panel if it so chooses and to determine both prejudice or whether the delay

burdened or unfairly harmed a party or hampered discovery; or rather whether it

induced the Defendant to use it as a ploy for the purpose of excluding otherwise

relevant evidence in an attempt to bar the Plaintiffs'/Appellants' experts from

using such facts as a basis for their properly rendering their opinions concerning

causation/ product failure in design of Defendant's/Appellee's product as alleged to have been responsible in causing the injury and resultant death of the Plaintiff, Betty L. McDermed.

Plaintiffs/Appellants submit that the Appellate Court rule that the Trial Court is to be instructed as a matter of law to hear, make findings, and determine Plaintiffs' Responses, to include conducting an evidentiary hearing to rule on Defendant's Daubert Motions on the merits; and if denied to set the matter for trial and to be subject to appeal in the interests of justice. Further the Plaintiffs/ Appellants show this Panel that that the issue of the existence or non-existence of jurisdiction may be raised at any time by either of the parties, the Trial Court, or by the Appellate Court sua sponte. *Been, et al. v. O.K. Industries, Inc., et al.,* No.08-7078 (10th Cir. 2010); and thus, avoid procedural premises that interfere with the rights of litigants to try their case on the merits.

Plaintiffs/Appellants accordingly respectfully request the Panel to reverse the District Court's ruling granting Defendant's Motion for Summary Judgment by default; to vacate the District Court's ruling granting Defendant's Daubert Motions by default, and to further direct the Trial Court to provide a hearing to present any mitigating circumstances including this Panel's ruling of fraud on the court or discovery abuse inherent in this Record on Appeal for the Trial Court to properly assess a measured determination of what imposition of sanctions is proper as set out in Fed. R. Civ. P. 37(c) against Plaintiffs'/ Appellants' Counsel

6

for the burdening of the Magistrate and the Court due to his late disclosures; balancing the effect of delay whether deminimus or not on the Defendant/Appellee any prejudice if any, whether or not the Defendant/Appellee had actual notice in writing of substantially all the items for which a Motion to Strike was filed and its representations therein will be shown to be a fraud upon the court as a matter of law and were topics under its exclusive control for which it had prior knowledge of, and to conduct a hearing for Plaintiffs'/Appellants' Counsel to present further evidence in making a record for the Appellate Court in mitigation or rebut any inference that he acted in bad faith, vexatiously, wantonly, or for oppressive reasons by virtue of providing untimely disclosures to gain any improper purpose.

Plaintiffs/Appellants take their appeal pursuant to 28 U.S.C. § 1291.

## Statement of Understanding of the Party's Concerning Joint Appendix

Counsel for the parties have conferred concerning the Joint Appendix filed at the time of the filing of the Appellants' Brief. Defendant's/ Appellee's Counsel has reserved the right to supplement the Appendix. Plaintiffs'/ Appellants' Counsel confirms and further agrees that the Defendant/ Appellee will have unfettered opportunity to supplement the Appendix, Sealed and Unsealed as Counsel deems necessary.

## II.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

7

I.    Because the 10th Circuit in *Rimbert v. Lilly*, 647 F.3d 1247 (10th Cir. 2011) has determined that Daubert Motions in excluding expert testimony in the context of products liability cases are "dispositive" rather than as alleged by the Defendant Ford Motor Company as being "non-dispositive; pursuant to Fed. R. Civ. P. 6(b) and D. Kan. Rule 6.1(d)(2), a party's response time for filing and serving of Responses is 21-days and a party's response time for filing and serving of Replies is 14-days. The timing rules for both the 14-day ("non-dispositional" motion) and 21-day ("dispositional" motion) rules pursuant to Fed. R. Civ. P. 6(b) and D. Kan. Rule 6.1(d)(1) and (2), are clearly jurisdictional and not procedural. Because Plaintiffs' Counsel's Motion to extend their Response time to was made within the 21-day exclusion period the Trial Court's refusal to rule on the substantive issues raised in this products liability wrongful death action requires remand to protect Plaintiffs' rights under the protections afforded them under Summary Judgement standards pursuant to Fed. R. Civ. P. 56.

II.   The 10th Circuit should follow the lead of the 6th and 2nd Circuits in providing remedial relief to litigants in federal court to avoid the pitfalls or dilemmas as shown in this Record for repeatedly filling motions in limine to strike Plaintiff's proofs under the guise of prejudice for Plaintiffs' late disclosures. Such "motions in limine/motions to strike" as apparent in this Record are becoming consistently disfavored and the Defendant Ford has previously been admonished for utilizing this trial strategy by the Sixth Circuit in *Louzon v. Ford Motor Co.*, 718 F.3d 556 (6th Cir. 2013) that the mislabeling and attributing such "motions in limine" as the instant Daubert Motions as being "non-dispositive" is improper and must allow plaintiffs the procedural and substantive rights they are entitled under Summary Judgement standards pursuant to Fed. R. Civ. P. 56. The State of California has further taken the lead by enacting effective in 2016 Calif. Code of Civ. Pro. §437c which provides relief to litigants from dispositive motions disguised as motions in limine by reinforcing the protections by developing procedural protections/safeguards for dispositive motions no matter how labeled.

III.  Plaintiffs further respectfully submit on appeal that any implication suggested by the Defendant Ford that it has presently established a requisite record that Ford has suffered prejudice on the instant Record concerning the issue of the late filings of Plaintiffs' disclosures, is not factually supported and/or are of such deminimus in nature on the instant Record, that the District Court's imposition of the harsh penalty of its rulings resulting in the dismissal of Plaintiffs' lawsuit is not of a character to satisfy the Gorsuch "gimlet eye" test or standard to absolve the Court from exercising its jurisdictional responsibilities to rule on Plaintiff's substantive issues raised in

both its defenses to Ford's  Daubert Motions to Exclude the Testimony of Plaintiff's Designated Experts; but further to show that as a matter of law that material fact controversy exists in denying Ford's Motion for Summary Judgement entitling the Plaintiffs their day in Court to prove up their wrongful death products liability action to the Jury.   The 10th Circuit should remand to the Trial Court for decision concerning the issue of sanctions of the Plaintiffs'/Appellants' Counsel on the issue of his filing late disclosures, and to be so guided within the context of rulings determined within the context of this Record on Appeal.

## III.

## <u>STATEMENT OF JURISDICTION</u>

Appellants timely filed their Notice of Appeal on May 2, 2017 within thirty

(30) days pursuant to Fed. R. App. P. 4(a)(4)(A) from the Memorandum and Order

denying Plaintiffs' Motion for Consideration, and Motion for New Trial entered

on April 26, 2017. The Plaintiffs takes their appeal pursuant to 28 U.S.C. § 1291.

## IV.

## <u>APPELLANT'S FACTUAL STAEMENT</u>

Plaintiffs/Appellants filed their Complaint on August 28, 2014 for the

alleged wrongful death of the Plaintiff Betty L. McDermed against Ford Motor

Company for her injuries and resultant death arising out of a two (2) car collision

which occurred in Topeka, Kansas on December 28, 2012.  (R.O.A. Joint

Appendix Vol. 1, Pages 24-35.)  On September 4, 2014 Plaintiffs'/Appellants'

Counsel provided Defendant's/ Appellee's Counsel of Record in the spirit of full

and open disclosure a series of documents which included Plaintiff Betty L.

McDermed's hospital records (containing the names of all of her treating

physicians and summaries of treatments); her Death Certificate concerning her

cause of death due to blunt trauma and containing the name of her certifying

Coroner; Plaintiffs'/Appellants' Counsel's Internal Office Memo of information

obtained in interviews with the Topeka Police Department Officer authoring the

Accident Report and summary of other EMT/First Responders; and fact witness

summaries; and to provide information relevant to this personal injury/wrongful

death case as materials became available. (R.O.A. Joint Appendix Vol. 7, Pages

504-505.) On September 13, 2014 Plaintiffs'/Appellants' Counsel provided

Defendant's/ Appellee's Counsel of Record in the spirit of full and open disclosure

additional documents naming fact and event witnesses. (R.O.A. Joint Appendix

Vol. 7, Page 505.) The Defendant Ford Motor Company filed their Answer

subsequent to this first informal actual disclosure approximately 2 weeks later on

September 17, 2014. (R.O.A. Joint Appendix Vol. 1, Pages 36-47.) The

Honorable U.S. Magistrate Teresa J. James on December 3, 2014 entered a Fed. R.

Civ. P. 16 Scheduling Order (R.O.A. Joint Appendix Vol. 1, Pages 61-73.) and in

part:

> "c) Supplementations of those disclosures under Fed. R. Civ. P. 26(e) must
> be served throughout the case at such times and under such circumstances
> as required by that rule. In addition, final supplemental disclosures must
> be served in any event 40 days before the deadline for completion of all
> discovery." (R.O.A. Joint Appendix Vol. 1, Page 65.)

Defendants'/Appellee's Supplemental Rule 26 Disclosures were timely

filed on November 5, 2015 at Doc. 77. (R.O.A. Joint Appendix Vol. 1, Page 10.)

Plaintiffs'/Appellants' were untimely filed eight (8) days late on November 24,

2015 at Doc. 85. (R.O.A. Joint Appendix Vol. 1, Page 11.)

In accordance with the U.S. District Court of Kansas' "Pillars of Professionalism Plaintiffs/Appellants attached in this Appellants' Brief-Appendix "D"- Local DCR 3.211 (Expert Witnesses) at Paragraph 7, stating:

> "7. Treating physicians may be identified as experts without the necessity of a full disclosure as set forth in this rule. However, if counsel anticipates using them for opinions other than causation, the nature and extent of this injury, and the reasonableness and necessity of past medical treatment and expenses, then full disclosure shall be made."

Defendant/Appellee had full access and unhampered opportunity throughout this litigation to conduct ex parte communications with Plaintiff Betty L. McDermed's healthcare providers as a vital means of discovery attached Brief-Appendix "E" and counsel whom our current Kansas Supreme Court Justice Caleb Stegall contributed *The  Time-Tested Use of Ex Parte Communications: Interviewing a Plaintiffs Health Care Providers as a Vital Means of Discovery*, Steadman, Kyle J. (acknowledging credit to current Kansas Supreme Court Justice Caleb  Stegall) stating in part:

> "The U.S. District Court for the District of Kansas has consistently found  that HIPPA does not prohibit the continued use of ex parte interviews of a personal injury plaintiff's treating healthcare providers." (Emphasis supplied.)

Plaintiffs'/Appellants' Counsel also provided HIPPA Release to obtain the medical records of the Driver and owner Ms. Emma Edwards of her 1999 Ford Contour Automobile Ms. Emma Edwards who had experienced "seat belt bruising/ syndrome" for which the Plaintiff Betty L. McDermed who was a front seat passenger did not; and the medical records of her treating physician Dr. Michael C. West and the results of her mammography and opinion to the likely

cause of her bruising [causation an approved topic under local DCR 3.211 at

Paragraph 7., *supra*.] was an effort to preclude the Plaintiffs'/Appellants' expert

from relying on it in his opinions or presented to the Jury as a relevant fact

of force of collision, that the front seat occupants were thrust forward and that

contact with a late deployed airbag was the likely cause of her fatal injury, and a

seat belt slipping under her arm due to their being thrust forward to create a seat

belt bruising/syndrome as inferred by the Defendant's human factors engineer and

photographed as an exhibit was not a likely cause of injury to the Plaintiff Betty

L. McDermed (R.O.A. Joint Appendix Vol. 10, Page 589.). The Defendant/

Appellee further was made aware of this medical record because one or more of its

Counsel was present at the taking of the Deposition of Plaintiffs'/Appellants'

medical epidemiology expert Shawn Parcells and was a marked Deposition

Parcells Exhibit #16 (R.O.A. Joint Appendix Sealed Vol. 11, Pages 153-156.) See

the 25 Page (Second) Motion to Strike filed on January 24, 2016 with attachments

(R.O.A. Joint Appendix Vols. 2, 3 and 4, at Pages 25-218 (Vol. 2); at Pages 219-

260 (Vol. 3); and at Pages 261-419(Vol. 4).

Plaintiffs'/Appellants' experts materially relied upon this fact of bruising,

or the lack thereof, for which the Defendant/Appellee knew was a substantial part

of their case at the taking of the Plaintiffs' medical epidemiologist designated

expert Shawn Parcells, (R.O.A. Joint Appendix Sealed Vol. 11Pages and 109; 110;

and 113.) Consequently Defendant/Appellee by its alleging prejudice for

Plaintiffs'/Appellants' Counsel's purportedly "late" disclosure of this above fact

was a materially untrue false statement to the court which Plaintiffs/ Appellants

are entitled to their relief without the Panel being required to labor under either the

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

law Standard of Review or clear error Standard of Review.   As shown in the

Record on Appeal both Plaintiffs' designated expert engineer and medical

epidemiologist expert opinions relied on this potentially damaging fact which the

Defendant/Appellee wished to "cleanse the Record" to exclude in a highly

burdensome manner the use of a Motion to Strike/in Limine as a method to

exclude a topic materially relevant to the issues of product failure and pattern of

injury.  [Its exclusion would have likely "dedaubertized" Plaintiffs/Appellants in

their ability to withstand Defendant's/ Appellee's Daubert Motions to Exclude

them thus concluding the case, because this 10th Circuit has ruled that Daubert

Motions are dispositive motions, procedurally and not on the merits.

Plaintiffs'/Appellants' retained experts in both of their filed Affidavits ascribe to

the importance of this fact as contained in this Record on Appeal, see McLellan

Affidavit (R.O.A. Joint Appendix Sealed Vol. 11, at Paragraph 6, Pages 109; 110;

and 113.)  Another alleged improper use of the Defendant's/ Appellee's Motion

to Strike (constituting a veiled motion in limine) alleged by the Plaintiffs/

Appellants (R.O.A.  Joint Appendix Sealed Vol. 11, at Paragraph 6, Pages 109;

110; and 113.) to constitute fraud on the court and for an improper use or purpose,

as decided by the 2nd Circuit Court of Appeals in *Louzon,* supra., was to attempt

to preclude Plaintiffs'/Appellants' engineering expert from utilizing  test data

13

within Defendant's/Appellee's control and obtained from their own internal crash

tests in support his underlying opinions of product failure. (R.O.A. Joint Appendix

Sealed Vol. 11, Pages 148-149.) (R.O.A. Joint Appendix Sealed Vol. 11, at

Paragraph 6, Pages 107-119.) The Plaintiffs'/Appellants' engineering expert

refers to this test data of the Defendant/Appellee as a "smoking gun". (R.O.A.

Joint Appendix Sealed Vol. 11, at Paragraph 6, Pages 112-113.) This test data

which the Defendant/ Appellee wishes to exclude on the basis of surprise and

prejudice for Plaintiffs'/appellants' late disclosure was provided to Plaintiffs'/

Appellants' Counsel on the last day due under the Magistrate's Scheduling Order

of September 25, 2015 at Doc.74 (R.O.A. Joint Appendix Vol. 1, Page 10.); and

during the next few months this test data was forwarded to be reviewed by

Plaintiffs'/Appellants' engineering expert and this Defendant's/ Appellee's own

report, for which they now claim surprise and prejudice was made a part of the

Plaintiff's Supplemental Rule 26 Disclosures/ designations that were filed eight

(8) days late on November 24, 2015 at Doc.85 to data they supplied on September

25, 2015; but for which they attempted to exclude on a sham averment of surprise

and prejudice under Fed. R. Civ. P. 26(a). Such conduct contained within the

Record on Appeal may well provide the Panel with a sufficient basis of finding the

existence of a bad faith filing resulting in a fraud upon the court as a matter of law

and to provide the Plaintiffs/ Appellants a remedy to mitigate and preclude the

harsh penalty of dismissal of their wrongful death lawsuit. (R.O.A. Joint

Appendix Vol. 1, Page 11.)

The seatbelt under the arm defense had been used previously by Ford to provide scientific testimony concerning pattern of injury opined by Plaintiffs'/Appellants' medical epidemiologist expert Shawn Parcells. In *Hinkle v. Ford Motor Company*, No. 3:11–24–DCR, 2012 WL 5868899 (E.D. Ky. Nov. 20, 2012) the Trial Court for the District of Kentucky in dealing with the admissibility of testimony of Ford's Human Factors Expert, Catherine Corrigan the issue of Ford's pattern of injury defense (Seatbelt worn under the arm issue) was determined to be of a relevant inquiry sufficient to withstand a Daubert challenge. See also *Cummings v. General Motors Corporation*, 365 F. 3d 944 (10th Cir. 2004) where a mispositioned seat defense resulted in a pattern of injury resulting in a front seat passenger's back compression fracture resulting in paraplegia which was consistent with Defendant General Motors Corporation's theory of causation.

## Timeline/ Plaintiffs'/Appellants' Statement of Facts

### Magistrate Teresa James Orders/ Defendant's First and Second Motions to Strike

1. The Honorable U.S. Magistrate Judge Teresa J. James issued her first Memorandum and Order (Doc. 73) on September 3, 2015 denying (Doc. 53) Defendant Ford Motor Company's Motion to Strike the Supplemental Attachments to Plaintiffs' Expert Report/McLellan. (R.O.A. Joint Appendix Vol. 1, Pages 212-225.).

2. The Honorable U.S. Magistrate Judge Teresa J. James issued her second Order (Doc. 134) on March 23, 2016 denying (Doc. 108) Defendant Ford Motor Company's Motion to Strike Plaintiffs' Untimely Response and denying (Doc. 121) Defendant's Motion to Strike Plaintiff's Response to Defendant's (Second) Motion to Strike (R.O.A. Joint Appendix Vol. 9, Pages 289-321.).

3. The Honorable U.S. Magistrate Judge Teresa J. James issued her third Order (Doc. 143) on April 1, 2016 granting in part and denying in part (Doc. 96) Defendant Ford Motor Company's Motion to Strike Plaintiffs' Untimely Supplemental Rule 26 Disclosures (R.O.A. Joint Appendix Vol. 9, Pages 289-321.)

On July 15, 2015 Counsel for the Defendant Ford Motor Company, Brad E. Miller, in Defendant's <u>First</u> "Motion to Strike Supplemental Attachments to Plaintiff's Expert Mr. David McLellan's Report (R.O.A. Joint Appendix Vol. 1, Page 65.) praying for the relief pursuant to Fed. R. Civ. P 37(c) <u>"although plaintiff service of supplemental attachment to their expert's report were clearly out of time. Instead, Plaintiffs filed what they labeled as a "Certificate of Compliance". See Plaintiffs' Certificate of Compliance (Doc. 44).</u> [See "Certificate of Compliance" (Doc. 44), marked Plaintiffs' Rule 59/60 Motion Exhibit "A"- (R.O.A. Joint Appendix Vol. 9, Pages 549-550.). <u>There is no explanation as to how serving attachments to their expert's report, nearly 4 months after the deadline has passed,</u> results in "compliance" with the Court's Scheduling Order…. <u>and Ford also requests an order  preventing Mr.</u>

<u>McLellan or Plaintiffs from using any of the previously undisclosed</u>

<u>"attachments" during his deposition or at trial.</u> (Emphasis ours).  Ford's

Counsel clearly misstated the record and inserted language that was   inflammatory

which has been a repeated character assassination of Plaintiffs' Counsel

throughout the course of Ford's Motions to Strike in this case. What  Counsel for

Ford failed to mention in this document was that on March 2, 2015 in

compliance with the Court's initial Scheduling Order (Doc. 21) Plaintiffs' Counsel

provided the Court with a "Certificate of Compliance" (Doc. 28), marked

Plaintiffs' Rule 59/60 Motion Exhibit "B"- (R.O.A. Joint Appendix Vol. 9, Pages

551-552.); which was the March 2, 2015 Expert Report of David McLellan, with

Attachments A-I and wherein he requested additional time to add material because

there was additional mulch material that he had requested from Ford and had

not received. Further, Plaintiffs' Counsel stated  therein <u>".... designation of certain</u>

<u>expert witnesses by either the identification of Betty Lou McDermed, Deceased's</u>

<u>treating physicians and her autopsy or report of  cause of death in accordance with</u>

<u>Fed.  R. Civ. P 26(2)(A) ..."</u> (Emphasis ours).  And Plaintiffs' Counsel provided

the Court with a "Certificate of Compliance" (Doc. 39), marked Plaintiffs' Rule

59/60 Motion Exhibit "C"- (R.O.A. Joint Appendix Vol. 9, Pages 553-554.). on

June 11, 2015 indicating that the Supplemental Expert Report of David McLellan,

with Attachments (6) would be provided on or before June 21, 2015. Providing

hard copies of the attachments was laborious and were not compiled for electronic

service until June 26, 2015. The Court was aware that these would be attached

however unfortunately the court designated a date in the <u>Court's Amended</u>

<u>Scheduling Order filed 6/24/2015</u> that a deadline would be "the date of the

scheduling order" and Plaintiff's Counsel was 2 days late not "nearly 4 months

after the deadline passed …" as Ford's Counsel Mr. Brad E. Miller misstated to

the Court in its Motion (Doc. 53, Page 3 of 4) attached hereto and marked

Plaintiffs' Rule 59/60 Motion Exhibit "D"- (R.O.A. Joint Appendix Vol. 9, Page

555.).  Plaintiffs respectfully show that the U.S. Magistrate Judge Honorable

Teresa J. James in her Order (Doc. 73, Page 24<u>) of September 3, 2015 noted</u>

<u>in part: "The Court notes Plaintiffs served the McLellan expert report on June 11,</u>

<u>2015 without written objections by Defendant,   and the parties jointly requested</u>

<u>an extension of Plaintiffs' expert deadline on June 22. Plaintiffs' service of the</u>

<u>supplemental attachment at issue four days later is harmless to Defendant."</u>

(Emphasis supplied).  Finally to show that this and other Defendant's Motions to

Strike were primarily not filed in good faith and with no prejudice other than

burdening Plaintiffs and the Court with this type of inane objection; as well as

objecting to disclosure of Decedent Plaintiff's treating  physicians and emergency

personnel in a wrongful death case and 3 days later dying from her injuries she

incurred in an automobile accident; the disclosure that  was provided in Plaintiffs'

Certificate of Compliance (Doc. 28),  and Plaintiffs further attach a an example of

Ford's treatment of case specific bibliography of their expert Dr. Scott<u>: no</u>

<u>objection from the Plaintiffs even if a Ford was a couple days late in getting their</u>

<u>expert reports which were due on September 25, 2015</u>, to-wit: "Representative

publications in the scientific fields in which Dr. Scott will testify:…'. A copy attached hereto for convenience of Court and Counsel marked Plaintiffs' Rule 59/60 Motion Exhibit "E"- (R.O.A. Joint Appendix Vol. 9, Page 556.).

Also on June 11, 2015 in compliance with the Court's initial Scheduling Order (Doc. 21) Plaintiffs' Counsel provided the Court with a "Certificate   of Compliance" (Doc. 40), marked Plaintiffs' Rule 59/60 Motion Exhibit "F"- (R.O.A. Joint Appendix Vol. 9, Page 557.)]  which was the June 11,  2015 designation of Plaintiffs expert' Shawn Lynn Parcells, BS, MSHAPI, PA and further stating therein that "his resume and the nature of his expected testimony and his report to be served on or before June 22, 2015,  in accordance with the Scheduling Order (Doc. 43) …", marked Plaintiffs' Rule 59/60 Motion Exhibit "G"- (R.O.A. Joint Appendix Vol. 9, Page 558.)

Also on December 23, 2015 in compliance with the Court's "Order Memorializing Rulings from December 11, 2015 Status Conference" (Doc. 90) Plaintiffs' Counsel provided the Court with a "Certificate of   Compliance" (Doc. 92) along with a 6-Page e-mail correspondence to Defendant's Counsel stating Plaintiffs' position pertaining to matter that had appeared in Plaintiffs' Supplemental Initial Disclosures untimely filed  and marked Plaintiffs' Rule 59/60 Motion Exhibit "J"- (R.O.A. Joint Appendix Vol. 9, Pages 567-573.). Defendant filed its <u>Second</u> "Motion to Strike and timely Plaintiffs'    Supplemental Initial Disclosures" on January 14, 2016 (Doc. 96).  On February 2, 2016 Plaintiffs' Counsel at 3:10 a.m. by reason of technical  difficulties with Plaintiffs'

19

Counsel's office scanner and attempting to re-number and identify Plaintiffs'

Exhibit Index in Response to Defendant  Ford Motor Company's Motion to Strike

(Doc. 96) to accompany Plaintiffs' Response (Doc. 103), filed untimely "4"-days

late and 1-work day exclusive of the weekend for which Judge James determined

(Doc.  134) not to be prejudicial to the Defendant and it was received.  Plaintiffs'

Response Exhibit Index (Doc. 103-1 consisting of 4 Pages) a copy for

convenience of Court and Counsel is attached and marked Plaintiffs' Rule   59/60

Motion Exhibit "I"- (R.O.A. Joint Appendix Vol. 9, Pages 563-566.).

During the time of December 22, 2015 through March 16, 2016 Plaintiffs'

Counsel was not only completing responses to Defendant's Second Motion  to

strike but also dealing with plaintiff's experts in providing information to secure

affidavit testimony in reference to the anticipated motions for summary judgment

to do on or before February 1, 2016.  On February 1,    2016, after the hour of 5:00

p.m., Defendant simultaneously filed       Defendant's Motions for Summary

Judgment (Doc.99) and a Daubert Motion to Exclude the Expert Testimony of

Plaintiffs' Expert Parcells (Doc. 101) and a Daubert Motion to Exclude the Expert

Testimony of Plaintiffs' Expert McLellan (Doc. 102). Plaintiffs' Counsel's Office

downloaded the documents and placed them in one grouping believing them to be

part and parcel of Defendant's Motion for Summary Judgment. See Affidavit of

Eric Kjorlie attached and marked Plaintiffs' Rule 59/60 Motion Exhibit "K"-

(R.O.A. Joint Appendix Vol. 9, Page 574-580.).   which includes a copy of his

phone logs to show that he was daily immersed as was the Magistrate in the

instant litigation to deal with the extensive and all-encompassing Motion to Strike
(Doc. 96) and discovery review of claims made for product complaints received
by Ford's Counsel and consisting of more than 2,000 pages of documents or
various other litigation materials. (Docs. 111 and 112, Pages 2 of 4). It should be
noted that under the Amended Scheduling Order that "Motions challenging the
admissibility of expert testimony" were due by February 29 2016. (2016 being a
Leap Year.)

Because Plaintiffs' Counsel required additional time to respond to the Defendant's
Motion for Summary Judgment and in having difficulty in consultation with his
experts on February 18, 2016 Plaintiffs requested an unopposed extension of time
to file their Response to the Defendant's Motion for Summary Judgment (Doc.
110); and at the same time Plaintiffs' Counsel filed an opposed motion(s) for
extension to respond to Ford's Daubert Motions against Plaintiffs' Experts
Parcells and McLellan. (Docs. 111 and 112) Plaintiffs' Counsel in a phone
conversation with Defendant Ford's Counsel Brad E. Miller on February 16, 2016
was advised that the Daubert Motions were non-dispositive and were due under
the 14-day rule on February 15, 2016 and did not have authority to grant the
extension unopposed. Plaintiff's Counsel on February 18, 2016 confirmed that
Ford  would not agree to the extension to respond to the downward motions. See
Affidavit of Eric Kjorlie attached and marked Plaintiffs' Rule 59/60 Motion
Exhibit "K" -(R.O.A. Joint Appendix Vol. 9, Pages 574-580.).

On March 23, 2016 U.S. Magistrate Judge Teresa J. James entered her Orders

(Doc. 134) to Defendant Ford's Second Motion to Strike in permitting the

Plaintiffs' Counsel's late response of February 2, 2015 filed at 3:10 a.m. in the

morning to be received; and that the delay of five days was short and over the

weekend and the Court considered the Motion on the merits; and issued her orders

which in part included a retaking of the Plaintiffs' product failure demonstration of

October 20, 2015; and that it be completed on or before May 11, 2016; and further

that Defendant's taking the depositions of the treating physicians of the Decedent

Plaintiff Betty McDermed would be taken, and which were done with cooperation

of Plaintiffs Council and Defendant's Counsel; however Defendant's Counsel

chose only one of the Doctors, a Dr. Bradley Woods on May 12, 2016, was

deposed by the Defendant.  Plaintiffs' Counsel filed a Certificate of  Compliance

(Doc. 161) on May 12, 2016 in accordance with the orders required of Judge

James. (Doc. 134) See "Certificate of Compliance" (Doc. 134), marked Plaintiffs'

Rule 59/60 Motion Exhibit "L"- (R.O.A. Joint   Appendix Vol. 9, Page 581-582.).

Neither Plaintiffs' Counsel, nor the Plaintiffs, have ever received notice from the

Court that noncompliance with any of the subsequent court orders after Judge

James Order of March 23, 2016 (for which Plaintiffs are shown on the Record to

be in full compliance) that any of their or their Counsel's actions through the date

of May 12, 2016 would result in a dismissal of the action.  See Affidavit of Eric

Kjorlie attached and marked Plaintiffs' Rule 59/60 Motion Exhibit "K"- (R.O.A.

Joint Appendix Vol. 9, Pages 574-580.). There is no place in the Record before the

<u>Court that Judge James' Order of March 23, 2016 (Doc. 134) did not warn or</u>
<u>constructively place Plaintiffs nor their Counsel on notice that the case would or</u>
<u>was in danger of being dismissed; nor were there any subsequent conduct actions</u>
<u>taken on the part of the Plaintiffs nor their Counsel that would or could be</u>
<u>construed to be willful or in some manner continuing gamesmanship during</u>
<u>discovery to the harm of the Defendant nor was the Defendant able to show any</u>
<u>significant harm to justify a dismissal with prejudice.</u> See Pages 1 of Defendant's
Daubert Motion to Exclude the Expert Testimony of Plaintiffs 'Expert Parcells
(Doc. 101) and its Daubert Motion to Exclude the Expert Testimony of Plaintiffs'
Expert McLellan (Doc. 102) are attached and marked Plaintiffs' Rule 59/60
Motion Exhibit "M"- (R.O.A. Joint Appendix Vol. 9, Page 581-582.).  In
accordance with the "Court's Order Memorializing Rulings from December 11,
2015 Status Conference (Doc. 90) Plaintiffs' Counsel on December 23, 2015 filed
a "Certificate of Compliance", indicating that he had carefully reviewed all of the
matters for which the Defendant was objecting as prejudicial for "late" disclosures
and as there indicated and confirmed all or the great majority of which had
previously been seasonally provided to Defendant's Counsel and which fully
explained Plaintiffs' Counsel's position pertaining to each item for which
Defendant was objecting to on the basis of late disclosure which is attached to
Plaintiffs' Certificate of Compliance filed on December 23, 2015 for convenience
of Court and Counsel marked Plaintiffs' Rule 59/60 Motion Exhibit "J"- (R.O.A.
Joint Appendix Vol. 9, Pages 567-573.).  Page1 of Defendant's Response to

Plaintiffs' Motion for an Extension of Time to Respond to Defendant's Daubert

Motion to Exclude the Expert Testimony of Plaintiffs' Expert Parcells (Doc. 119)

and Page 1 of Defendant's Response to Plaintiffs' Motion for an Extension of

Time to Respond to Defendant's Daubert Motion to Exclude the Expert Testimony

of Plaintiffs' Expert Parcells (Doc. 120) are attached and marked Plaintiffs' Rule

59/60 Motion Exhibit "O"- (R.O.A. Joint Appendix Vol. 10, Pages 587-588.).

Page 17 exemplar photographs of Dr. Scott's Expert Report of September 25,

2015 concerning depiction of a seatbelt worn under the arm photograph is attached

and marked Plaintiffs' Rule 59/60 Motion Exhibit "P"- (R.O.A. Joint Appendix

Vol. 10, Page 589.).

There were no further timing miscues of Plaintiff's Counsel, Plaintiffs respectfully

submit that the Court should give deference to U.S. Magistrate Judge Teresa J.

James' Order of March 23, 2016 to such findings that   Defendant "is not

prejudiced by such a short delay over a weekend" to the February 2, 2016 at 3:10

a.m. of Plaintiffs' filing of their Response (Doc. 103) to Defendant's Second

Motion to Strike (Doc. 96) in her Order of March 23, 2016 (Doc. 134).  <u>Plaintiffs

further show or submit that they and their Counsel met all court imposed deadlines

established by Judge Teresa J. James in her March 23, 2016 Order</u> and fully

complying (Doc. 161) with all subsequent Orders of Judge James and in full

compliance with Judge Teresa J. James Orders (Doc. 134) and her Order April 1,

2016 (Doc. 143). (Emphasis supplied.)

**V.**

## ARGUMENTS AND AUTHORITIES

I.     Because the 10th Circuit in *Rimbert v. Lilly*, 647 F.3d 1247 (10th Cir. 2011) has determined that Daubert Motions in excluding expert testimony in the context of products liability cases are "dispositive" rather than as alleged by the Defendant Ford Motor Company as being "non-dispositive; pursuant to Fed. R. Civ. P. 6(b) and D. Kan. Rule 6.1(d)(2), a party's response time for filing and serving of Responses is 21-days and a party's response time for filing and serving of Replies is 14-days. The timing rules for both the 14-day ("non-dispositional" motion) and 21-day ("dispositional" motion) rules pursuant to Fed. R. Civ. P. 6(b) and D. Kan. Rule 6.1(d)(1) and (2), are clearly jurisdictional and not procedural. Because Plaintiffs' Counsel's Motion to extend their Response time to was made within the 21-day exclusion period the Trial Court's refusal to rule on the substantive issues raised in this products liability wrongful death action requires remand to protect Plaintiffs' rights under the protections afforded them under Summary Judgement standards pursuant to Fed. R. Civ. P. 56.

### Standard of Review

"Federal courts are courts of limited jurisdiction" and "must have a statutory basis for their jurisdiction." *Dutcher I*, 733 F.3d at 984 (quoting *Rural Water Dist. No. 2 v. City of Glenpool*, 698 F.3d 1270, 1274 (10th Cir. 2012). We must "presume no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction" that jurisdiction exists; that showing must be made by a preponderance of the evidence. *Id.* at 985 (quoting *United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999). "We review de novo whether the district court had jurisdiction to act." *Id.*

A motion for amendment under Rule 59(e) is limited to a narrow set of circumstances: it "is appropriate where the court has misapprehended the facts, a party's position, or the controlling law… It is not appropriate to revisit issues

already addressed or advance arguments that could have been raised in prior briefing." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012(10th Cir. 2000) (citing *Van Skiver*, 952 F. 2d at 1243) "Grounds warranting a motion to reconsider, include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) <u>the need to correct clear error or to</u> <u>prevent manifest injustice</u>. "(citing *Brumark Corp. v. Samson Resources Corp.* 57 F. 3d 941, 948 (10th Cir. 1995)). (Emphasis supplied.) The same standard has been applied to both Rule 59(e) motions, see id.; *Schlussler-Womak v. Chickasaw Tech Prod.*, 116 Fed. Appx. 772,773 (10th Cir. 2004) (unpublished), and Rule 60(b) motions, see *Lyons v. Dept. of Corr.*, 12 Fed. Appx. 772,773 (10th Cir. 2001) (unpublished); *Adams v. Anderson*, 12 Fed. Appx. 910, 914 (10th Cir. N2001) (unpublished).

In *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, (10th Cir. 2007), where the court their determined a Rule 30(b)(6) deposition of a material witness was unable to be taken due to delay resulting from plaintiffs much misconduct and dismissal was in that case appropriate...[B]ecause Ecclesiastes fully engaged in the process of delay that resulted in the loss of vital Rule 30(b)(6) testimony.] Again, In *Ecclesiastes*, supra.:

"[A] n abuse of discretion occurs when the District Court makes a clear error of judgment or exceeds the bounds of permissible choice in the circumstances. This <u>occurs when a district court relies upon an erroneous conclusion of law, or upon</u>

26

clearly erroneous findings of fact." (Emphasis supplied.)  And see also: "We review a district court's ruling on a motion in limine for an abuse of discretion. "Branham v. Thomas M. Cooley Law Sch., 689 F.3d 558, 562 (6th Cir. 2012). Similarly, "[w]e review denials of motions to compel discovery for an abuse of discretion." Evans v. Sir Pizza of Kentucky, Inc., 476 Fed. Appx. 605, 608 (6th Cir.2012). "An abuse of discretion occurs if the district court relies on clearly erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment. "Miller v. Countrywide Bank, N.A. (In re Countrywide Fin. Corp. Mortg. Lending Practices Litig.), 708 F.3d 704, 707 (6th Cir. 2013)  (internal quotation marks omitted).

This Court reviews for an abuse of discretion a district court's decision to dismiss an action for failure to prosecute. *E.g.*, *Nasious v. Two Unknown B.I.C.E. Agents*, No. 07-1105, __ F.3d __, 2007 WL 1895877, at * 2 (10th Cir. July 3, 2007) ("We review dismissals under Rule 41(b) for abuse of discretion."); *see Gripe v. City of Enid, Okla.*, 312 F.3d 1184, 1188 (10th Cir. 2002). An abuse of discretion occurs when a district court makes "a clear error of judgment or exceed[s] the bounds of permissible choice in the circumstances." *McEwen v. City of Norman, Okla.*, 926 F.2d 1539, 1553-54 (10th Cir. 1991). This occurs when a district court relies upon an erroneous conclusion of law or upon clearly

27

erroneous findings of fact. *See Ashby v. McKenna*, 331 F.3d 1148, 1149 (10th

Cir. 2003).

### **Arguments and Authorities**

Subject-matter jurisdiction cannot be forfeited or waived and should be

considered when fairly in doubt. *Arbaugh* v. *Y & H Corp.*, 546 U. S. 500, 514

(2006) (citing *United States* v. *Cotton*, 535 U. S. 625, 630 (2002)). State law in

Kansas is in accord and follows the decisions of the 10th Circuit, and of note:

"When jurisdiction is vested either by statute or the constitution which

establishes the Court's authority to hear and decide a particular type of

action, the Court has no discretion other than to perform its judicial duty or

function as a matter of law to both hear and decide the matter." [See *Chelf v. State*,

46 Kan. App. 2d 522,529, 263 P.3d 852 (2011).]   Further, the Kansas Supreme

Court's decision in B*oard of Sedgwick County Comm'rs v. City of Park City*, 293

Kan. 107, 260 P.3d 387 (2011) is applicable on solid ground of jurisdiction in the

instant case, to-wit:

> "3. An appellate court has no authority to create equitable exceptions to
> jurisdictional requirements and, therefore, the use of the unique circumstances
> doctrine to save an untimely appeal is illegitimate. Accordingly, *Johnson v.
> American Cyanamid Co.*, 243 Kan. 291, 758 P.2d 206 (1988), and *Schroeder v.
> Urban*, 242 Kan. 710, 750 P.2d 405 (1988), are overruled to the extent they
> authorize an exception to a jurisdictional rule. Syl. ¶ 3.

Plaintiffs'/ Appellants' Issue I concerning their claim on appeal that  the

Trial Court on the Record on Appeal demonstrates the clear existence of subject

matter jurisdiction in applying Fed. R. Civ. P. 6(b) and D. Kan. Rule 6.1(d)(2),

and the requirement of the Court's duty to exercise it for their rightful benefit

upon the authority of the 10th Circuit's decision of *Rimbert v. Lilly*, 647 F.3d

1247 (10th Cir. 2011) which determined that at least within the context of products

liability litigation, that a Daubert Motion filed for the purpose of excluding a

party's expert testimony is clearly "dispositive", hence, pursuant to Fed. R. Civ.

P. 6(b) and D. Kan. Rule 6.1(d)(2), a party's response time for filing and serving

of Responses is 21-days and a party's response time for filing and serving of

Replies is 14-days. The timing rules for both the 14-day ("non-dispositional"

motion) and 21-day ("dispositional" motion) rules pursuant to Fed. R. Civ. P. 6(b)

and D. Kan. Rule 6.1(d)(1) and (2), are determinative of whether jurisdiction

exists and may not be squandered by ignorance but must be zealously preserved

and protected by the Court even on its own motion sua sponte. On the Record the

Plaintiffs'/Appellants' request for an additional twenty (20) days to respond to

both the Defendant's Motion for Summary Judgment and Defendant's Daubert

Motions as justification for their relief of the grant of summary simultaneously

filed on the same date was jurisdictionally correct and timely filed within the 21-

day window; and their right to not have their statutory right of the continuance

diminished by the "excusable neglect" exception seldom granted and which would

not have been granted on their Counsel's additional three (3) days exception on

the obvious ground that ignorance of the law when it comes to subject matter

jurisdiction is unavailing as no Court has the right to act outside its statutory grant of authority to do so.

See also *United States ex rel. Haight v. Catholic Healthcare West*, 602 F.3d 949 (9th Cir. 2010) which held that courts' discretion in this area is exceptionally narrow stating:

"The court next judged whether FRAP 26(b) or FRAP 2 provided authority to grant a retroactive extension of the time to appeal. Rule 26(b) authorizes a court of appeals to "extend the time prescribed by these rules or by its order to perform any act" for good cause. The rule also, however, goes on to prohibit a court from extending the time for "a notice of appeal (except as authorized in Rule 4)." Since appellants had not filed a motion for extension within 30 days, as required by Rule 4, the court held Rule 26(b) afforded no relief.18 Rule 2 similarly permits a court of appeals (again for good cause) to "suspend any provision of these rules in a particular case and order proceedings as it directs, *except as otherwise provided in Rule 26(b)*" (emphasis added). The court held that the emphasized language precluded appellants from relying on Rule 2, because Rule 26(b) prohibits extensions beyond those allowed by Rule 4 itself.19 Moreover, because the requirement that a motion for extension must be filed within 30 days appears not only in Rule 4 but also in section 2107(c), the court held that, under *Bowles*, the requirement of filing a motion within 30 days was a jurisdictional prerequisite that "could not be waived under Rule 2, even if Rule 2 purported to authorize such action."

And *Bowles v. Russell*, 551 U.S. 205, 212–13 (2007);

"…After receiving the order, Bowles filed his notice of appeal on February 26-16 days after the district court's order. The court of appeals rejected the appeal as untimely. The Supreme Court granted review, and Bowles argued, among other things, that he had been justified in relying on the district court's order. The Supreme Court rejected the argument as immaterial. It held that the 14-day window is established by statute and thus is a jurisdictional limitation on the power of courts of appeals to hear cases. The Court rejected Bowles's argument for an "equitable exception," finding that whether Bowles had been justifiably misled by the trial court could not be taken into account, because the court lacked any power on any grounds to extend the 14-day period established by Congress."

See also, *Tal v. Harth*, No. 14-6205 (10th Cir. 2015):

"Whether Mr. Tal is entitled to tolling of the appeal period is itself a

"jurisdictional issue in this appeal," *DeLeon v. Marcos*,659 F.3d 1276,

1280-81 (10th Cir. 2011), and "[c]ourts have 'no authority to create

equitable exceptions. to jurisdictional requirements,'" *Watkins v. Leyba*, 543

F.3d624, 627 (10th  Cir.2008)."

II.     **The 10th Circuit should follow the lead of the 6th and 2nd Circuits in providing remedial relief to litigants in federal court to avoid the pitfalls or dilemmas as shown in this Record for repeatedly filling motions in limine to strike Plaintiff's proofs under the guise of prejudice for Plaintiffs' late disclosures. Such "motions in limine/motions to strike" as apparent in this Record are becoming consistently disfavored and the Defendant Ford has previously been admonished for utilizing this trial strategy by the Sixth Circuit in *Louzon v. Ford Motor Co.*, 718 F.3d 556 (6th Cir. 2013) that the mislabeling and attributing such "motions in limine" as the instant Daubert Motions as being "non-dispositive" is improper  and must allow plaintiffs the procedural and substantive rights they are entitled under Summary Judgement standards pursuant to Fed. R. Civ. P. 56. The State of California has further taken the lead by enacting effective in 2016 Calif. Code of Civ. Pro. §437c which provides relief to litigants from dispositive motions disguised as motions in limine by reinforcing the protections by developing procedural protections/safeguards for dispositive motions no matter how labeled.**

## Standard of Review

This Court reviews for an abuse of discretion a district court's decision to

dismiss an action for failure to prosecute. *E.g.*, *Nasious v. Two Unknown B.I.C.E.*

*Agents*, No. 07-1105, __ F.3d __, 2007 WL 1895877, at * 2 (10th Cir. July 3,

2007) ("We review dismissals under Rule 41(b) for abuse of discretion."); *see*

*Gripe v. City of Enid, Okla.*, 312 F.3d 1184, 1188 (10th Cir. 2002).  An abuse of

discretion occurs when a district court makes "a clear error of judgment or

exceed[s] the bounds of permissible choice in the circumstances." *McEwen v.*

*City of Norman, Okla.*, 926 F.2d 1539, 1553-54 (10th Cir. 1991). This occurs

when a district court relies upon an erroneous conclusion of law or upon clearly

erroneous findings of fact. *See Ashby v. McKenna*, 331 F.3d 1148, 1149 (10th

Cir. 2003).

## Arguments and Authorities

**"[T]he only parties willing to invest the time and money in making motions in limine on cases that may never go to trial are repeat players like insurance companies and prosecutors or deep pockets willing to spend money on scorched earth tactics to discourage impecunious plaintiffs."). 21 WRIGHT & GRAHAM, *supra*, § 5037.10 Louzon v. Ford Motor Co., 718 F. 3d 556 (6th Cir. 2013)"**

Plaintiffs respectfully show this Honorable 10th Circuit Court of Appeals

that the Trial Court, along with the Plaintiffs, had been misled by Defendant's

mischaracterization in its pleadings which are text-book Daubert Motions (Docs.

101-(R.O.A. Joint Appendix Vol. 5, Pages 106-126.). and (102-(R.O.A. Joint

Appendix Vol. 5, Pages 127-146.). describing them as being "non-dispositive",

when Defendant's text-book Daubert Motions (Docs. 101 and 102) when viewed

are as a matter of law and fact "dispositive" by definition and legal construct.

(See Exhibit- "G" Re: Plaintiffs' Rule 59/60 Motions to Vacate and Set Aside

Judgment - Amended Scheduling Order Summary of Deadlines and Settings.

(Doc.- 43-R.O.A. Joint Appendix Vol.1, Page107.).; Exhibit- "M"-Re: Plaintiffs'
Rule 59/60 Motions to Vacate and Set Aside Judgment - Page 1 of Defendant's
Daubert Motion/ Parcells. (Doc. 101) and Page 1 of Defendant's Daubert
Motion/ McLellan (Doc. 102); Exhibit- "N" Re: Plaintiffs' Rule 59/60
Motions to Vacate and Set Aside Judgment - Merriam-Webster's definition of
"dispositive" and "non"; and Exhibit- "O" Re: Plaintiffs' Rule 59/60 Motions to
Vacate and Set Aside Judgment- Page 1 of Defendant's Response in Opposition to
Plaintiffs' Motion for Extension of Time to Respond to Defendant's Daubert
Motion/ Parcells. (Doc. 119-R.O.A. Joint Appendix Vol. 8, Pages 24-29.). and
Page 1 of Defendant's Response in Opposition to Plaintiffs' Motion for Extension
of Time to Respond to Defendant's Daubert Motion/ McLellan. (Doc. 120- R.O.A.
Joint Appendix Vol. 8, Pages 30-34.).

Plaintiffs/Appellants show the Trial Court that both the Court and the
Plaintiffs were mistaken and misled by the Defendant and it is clear in fact and
law that Defendant's Daubert Motions (Docs. 101 and 102) <u>can only</u> as drawn and
above indisputably shown be considered "dispositive", (Emphasis supplied.)

Plaintiffs having respectfully shown the Court that such mislabeling or
mischaracterization of Defendant's Daubert Motions in fact and law are clear
error and result in the Trial Court's power and duty to exercise its jurisdiction to
hear and determine and rule on the respective Motions for Summary Judgment and
the Daubert Motions at issue and on their merits.  Because Defendant's Daubert

Motions are non-dispositive the Plaintiffs the Plaintiffs have been denied their opportunity to be rightly heard on their substantive Responses to their Motions for an Extension of Time (Docs. 111 and 112), for good cause shown, to both notice and to their rightful 21-day response time pursuant to Fed. R. Civ. P. Rule 54 protections rather than the 14-day response time the Defendant had proclaimed and for which the Trial Court determined correct however in error requiring remand and decision on the merits in these further proceedings.

Defendant's error and the Court's and the Plaintiff's detrimental reliance thereon cannot be cured; the error is apparent and clear, the confusion that exists which was created by the Defendant and by virtue of the manner in which Defendant raised their issue by filing their respective Daubert and Summary Judgment Motions together simultaneously; which are unquestionably interdependent upon each other in an attempt to obtain their right to have their lawsuit determined upon the merits to obtain their judgment against the Defendant because the Trial Court cannot refuse to exercise its jurisdiction unless the Court determines to recuse himself Court clearly detrimentally relied upon a false premise of the law which further militates against imposition of the discovery death penalty of dismissal for discovery abuse under the standards of to the harm of the Plaintiffs which must be cured, the judgments vacated, and that proceedings be reinstated on all issues then pending and to be adjudged on the merits. As the Record below shows this clear mistake of law and fact which has left the Plaintiffs bereft of their due process rights to notice, the right to explain, defend, and be

heard, and to have the factual determinations made independent of a hearing or response must on their present showing be carefully reviewed and determined by the Court to bestow upon them those procedural protections, including their 21-day response time, and to request an extension of time to respond if made during that time and for good cause shown to allow them to properly respond to the issues raised in the motions deemed "dispositive"; and to equally enjoy the fruits, privileges, and procedural protections under the Guidance of this Honorable Court with the goal to fairly provided to all litigants their rights, privileges and duties in accordance with orderly and unencumbered Fed. R. Civ. P. Rule 54 proceedings.

The Trial Court on its own motion has authority under Rule 59 and Rule 60 to correct clear error upon either a determination that the Court relied upon clearly erroneous findings of fact, when the Court applies the wrong legal standard, or when the Court has determined that a clear error of judgment has resulted in manifest injustice to the parties before it or harm to the reputation of the Court is probable. Plaintiffs on the instant Record on Appeal are entitled as a matter of law to a 21-day response period respond to a dispositive motion.

Because the Tenth Circuit in *Rimbert v. Lilly*, 647 F.3d 1247 (10th Cir. 2011) has determined that Daubert Motions in excluding expert testimony in the context of products liability cases is "dispositive", rather than as alleged by the Defendant Ford Motor Company as being "non-dispositive; pursuant to Fed. R. Civ. P. 6(b) and D. Kan. Rule 6.1(d)(2), a party's response time for filing and

serving of Responses is 21-days and a party's response time for filing and serving

of Replies is 14-days.  The timing rules for both the 14-day ("non-dispositional"

motion) and 21-day ("dispositional" motion) rules pursuant to Fed. R. Civ. P. 6(b)

and D. Kan. Rule 6.1(d)(1) and (2), are clearly jurisdictional and not procedural.

For instance, of note is that the Kansas Supreme Court's decision in the

B*oard of Sedgwick County Comm'rs v. City of Park City*, 293 Kan. 107,     260

P.3d 387 (2011) is applicable on this ground of jurisdiction, to-wit:

> "3. An appellate court has no authority to create equitable exceptions to
> jurisdictional requirements and, therefore, the use of the unique circumstances
> doctrine to save an untimely appeal is illegitimate. Accordingly, *Johnson v.*
> *American Cyanamid Co.*, 243 Kan. 291, 758 P.2d 206 (1988), and *Schroeder v.*
> *Urban*, 242 Kan. 710, 750 P.2d 405 (1988), are overruled to the extent they
> authorize an exception to a jurisdictional rule. Syl. ¶ 3.

Plaintiffs, as this Honorable Court, must rely principally upon the authority

of the Sixth Circuit Court's Decision in *Louzon v. Ford Motor Co.*, 718 F.3d 556

(6th Cir. 2013).  In *Louzon*, the Sixth Circuit determined that litigants should raise

such legal and factual challenges as part of motions for summary judgment. As

Ford's motion in limine did "not require any rulings relating to the admissibility of

evidence at trial," the Circuit Court held that Ford's motion in limine was "no

more than a rephrased summary judgment motion" that the district court should

not have considered:

> "A motion in limine is 'any motion, whether made before or during trial, to

exclude anticipated prejudicial evidence before the evidence is actually offered."

"Unlike a summary judgment motion, which is designed to eliminate a trial in

cases where there are no genuine issues of material fact, a motion in limine is

designed to narrow the evidentiary issues for trial and to eliminate unnecessary

trial interruptions…."

The Sixth Circuit Court noted that:

"[O]ur sister circuits that have addressed "the overlap of a motion in limine
with a motion for summary judgment have taken the position similar to that
adopted by the Sixth Circuit.  The circuits: have recognized these dangers and
reverse the underlined decisions.  For example, the Federal Circuit recently
reversed the District Court after it had "essentially converted [a] motion in limine
into a motion for summary judgment."  The Federal Circuit explained that '[I]n
doing so, the court did not allow for the full development of the evidence, and
deprived [the defendant] of an opportunity to present all pertinent material to
defend against the dismissal of its inequitable conduct defense." Plaintiffs in
further argument urge the Court adopt the Sixth Circuit's ruling reflects the
prevailing view among federal courts that motions in limine do not provide
additional opportunities to seek dismissals of claims. The Sixth Circuit joins other
circuits in holing that motions in limine may not be used in civil cases to resolve
factual issues that are properly raised by motion for summary judgment.

For example, the Federal Circuit recently held that arguments relating to the

sufficiency of evidence are the subjects of motions for summary judgment or

judgment as a matter of law, not motions in limine. The Seventh Circuit similarly

held that a defendant had to raise an argument about the admissibility of evidence

directed to whether damages were reasonably certain as part of a summary

judgment motion, not a motion in limine. In *Louzon*, the Sixth Circuit also cited

Kentucky, Michigan, and Ohio federal court decisions espousing similar

principles.  These issues of using motions in limine/strike are disfavored for which

this use dovetails into Plaintiff's Issues II. and III. Which it also pertains to

California's Revision of Rule 37 to avoid the motion practice to strike and

requiring a 45-day notice to respond to motions to strike which are no more than veiled summary disposition motions. See *"The Case Against Dispositive Motions in Limine, Part 1 and 2"*, Ritchie, Solange E., the Gavel, published by the Orange County Trial Lawyers Association, Volume 14, Number 4, (Fall 2011) and Volume 15, Number 1 (Spring 2012).

In a 2013 *post- Louzon v. Ford* case the Honorable Joseph R. Goodwin, United States District Judge for the Southern District of West Virginia, in his Pretrial Order #87, *In re: American Medical Systems, Inc. v. Pelvic Repair Systems Products Liability litigation*, MDL NO. 2325 nips and resolves this issue in the bud by referring such Motions as here present in the instant matter now before the Court in alleviating the problem in describing them by **separating them into the two categories at: "Section 4.  <u>Daubert Motions and Non-Daubert Based Dispositive Motions.</u>"; and at "Section 5.  <u>Daubert Based Dispositive Motions and Motions in Limine.</u>"!**

The Supreme Court has recognized this distinction, explaining that "[i]n a civil action, the question whether a particular affirmative defense is sufficiently supported by testimony to go to the jury may often be resolved on a motion for summary judgment, but of course motions for summary judgment are creatures of civil, not criminal, trials." United States v. Bailey, 444 U.S. 394, 412 n. 9, 100 S. Ct. 624, 62 L.Ed.2d 575 (1980). In other words, a mechanism already exists in civil actions to resolve non-evidentiary matters prior to trial — the summary-

judgment motion. Allowing a party to litigate matters that have been or should have been resolved at an earlier stage not only allows those dissatisfied with the court's initial ruling a chance to relitigate, but also deprives their opponents of the procedural protections that attach at summary judgment. *See* Williams v. Johnson, 747 F.Supp.2d 10, 14 (D.D.C.2010) ("In light of their limited purpose, motions in *limine* should not be used to resolve factual disputes, which remains the function of a motion for summary judgment, with its accompanying and crucial procedural safeguards [of notice].") (internal quotation marks omitted)

Dispositive motions by definition resolve legal issues which although they are intermeshed in fact resolve legal questions independent of the facts. Accordingly: "It goes without saying that a material issue of fact determination is nothing more than a sufficiency determination." In *Maiorana v. U. S. Mineral Products Co.,* 52 F. 3d 1124, 1131-32 (CA 2, 1995):

"The court permitted the motion in limine to be used for this purpose. Yet, the court held that since the motion was dispositive, it must comply with MCR 2.116(G0(1)(a)(ii), requiring such a motion to be filed 21-days before the hearing: Because defendants were actually attacking the sufficiency of the evidence supporting the expert's opinions, and not whether the evidence on which the experts relied was admissible, we agree with the trial court that defendant's motion was not merely a motion in limine, but in reality was a motion for summary disposition. Thus, the trial court erred in failing to grant plaintiff the proper time in which to respond to defendant's motion. (Emphasis ours.)

The Sixth Circuit's decision in *Louzon, supra* exemplifies a broadening consensus that litigants must pursue all post-discovery, potentially dispositive arguments through summary judgment motions.

Based upon *Louzon,* supra, and that on the above authority that the Court remand to the Trial Court, based upon a clear mistake of fact and law which is shown to be   present, i.e. that Defendant's Daubert motions are "dispositive" and not "non-dispositive", and accordingly the Plaintiffs are entitled to a 21-day response time to the Defendant's Daubert Motions (Docs. 101 and 102) simultaneously filed with Defendant's Motion for Summary Judgment (Doc. 99-R.O.A. Joint Appendix Vol. 5, Pages 50-52.).  on February 1, 2016 and for them now to be adjudged and determined.

III.  **Plaintiffs further respectfully submit on appeal that any implication suggested by the Defendant Ford that it has presently established a requisite record that Ford has suffered prejudice on the instant Record concerning the issue of the late filings of Plaintiffs' disclosures, is not factually supported and/or are of such deminimus in nature on the instant Record, that the District Court's  imposition of the harsh penalty of its rulings resulting in the dismissal of Plaintiffs' lawsuit is not of a character to satisfy the Gorsuch gimlet eye standard to absolve the Court from exercising its jurisdictional responsibilities to rule on Plaintiff's substantive issues raised in both its defenses to Ford's  Daubert Motions to Exclude the Testimony of Plaintiff's Designated Experts but further to show that as a matter of law that material fact controversy exists in denying Ford's Motion for Summary Judgement entitling the Plaintiffs their day in Court to prove up their wrongful death products liability action to the Jury.**

## Standard of Review

This Court reviews for an abuse of discretion a district court's decision to

dismiss an action for failure to prosecute. *E.g.*, *Nasious v. Two Unknown B.I.C.E. Agents*, No. 07-1105, __ F.3d __, 2007 WL 1895877, at * 2 (10th Cir. July 3, 2007) ("We review dismissals under Rule 41(b) for abuse of discretion."); *see Gripe v. City of Enid, Okla.*, 312 F.3d 1184, 1188 (10th Cir. 2002). An abuse of discretion occurs when a district court makes "a clear error of judgment or exceed[s] the bounds of permissible choice in the circumstances." *McEwen v. City of Norman, Okla.*, 926 F.2d 1539, 1553-54 (10th Cir. 1991). This occurs when a district court relies upon an erroneous conclusion of law or upon clearly erroneous findings of fact. *See Ashby v. McKenna*, 331 F.3d 1148, 1149 (10th Cir. 2003)

### Arguments and Authorities

There were no further timing miscues of Plaintiff's Counsel, Plaintiffs respectfully submit that the Court should give deference to U.S. Magistrate Judge Teresa J. James' Order of March 23, 2016 to such findings that Defendant "is not prejudiced by such a short delay over a weekend" to the February 2, 2016 at 3:10 a.m. of Plaintiffs' filing of their Response (Doc. 103) to Defendant's Second Motion to Strike (Doc. 96) in her Order of March 23, 2016 (Doc. 134). Plaintiffs further show or submit that they and their Counsel met all court imposed deadlines established by Judge Teresa J. James in her March 23, 2016 Order and fully

complying (Doc. 161) with all subsequent Orders of Judge James and in full

compliance with Judge Teresa J. James Orders (Doc. 134) and her Order April 1,

2016 (Doc. 143).

In

"Before imposing dismissal as a sanction, a district court should ordinarily
evaluate the following factors, on the record: (1) the degree of actual prejudice to
the [other party]; (2) the amount of interference with the judicial process; (3) the
culpability of the litigant; (4) whether the court where the party in advance of the
dismissal of the action would be a likely sanction for noncompliance; and (5) the
efficacy of lesser sanctions." *Gripe v. City of Enid*, 312 F.3d 1184,1187 (10th Cir.
2002) (quoting *Ehrenhaus,* 965 F.2d at 921) . "This list", hereinafter referred to as
the *Ehrenhaus* factors, "is not exhaustive, nor are the factors necessarily" of equal
weight. *Chavez,*402 F.3d at 1044. "Only when the aggravating factors outweigh
the judicial system's strong predisposition to resolve cases on their merits is
dismissal an appropriate sanction." (Internal quotation marks omitted).

In *Lee v. Max International, LLC*, 638 F. 3d 1318 (10th Cir. 2011) Justice

Neil M. Gorsuch's authored the opinion on the issues raised by the parties and the

Court in the instant case turning a "Gimlet Eye" in determining whether a federal

appellate court may interfere with the district court's order dismissing claims or

entering a default judgment for discovery misconduct.  Judge Gorsuch in that case

where three chances had been given to the plaintiffs to comply with discovery

obligations, following the dismissal of the plaintiff's case under Fed. R. Civ. P.

37(b) noted: "three strikes or more than enough to allow the District Court to call a

litigant out."  Further, in *Lee v. Max International, LLC*, supra., a warning of the

case being dismissed was of record.  If discovery orders were not adhered to, is to

similar with the facts in the instant case.  There was no warning in *Lee*, although a

warning may be determined from the factual record, and thus a warning may be
constructive and not actual. Judge Gorsuch for the Panel noted that in determining
the propriety of a dismissal with prejudice that the *Ehrenhaus* factors were not a
"rigid test" and that the District Court does not have to evaluate those factors or
discuss them in order "so long as our independent review of the record confirms
that the district court did not abuse its discretion". (Also, *Ehrenhaus v. Reynolds*,
965 F.2d 916 (10th Cir.1992); *Ormond v. Anthem, Inc.*, 2011 U.S. Dist. LEXIS
56066 (S.D. Ind. 2011); *DL v. District of Columbia*, 2011 U.S. Dist. LEXIS 49788
(D.C. 2011); *Archibald v. City of Hartford*, 2011 U.S. Dist. LEXIS 49299 (D.
Conn. 2011); and *Bell v. Texaco*, 2011 U.S. Dist. LEXIS 33039 (D. Miss. 2011).

The Tenth Circuit in *Lee v. Max, Intl*, supra pointedly noted, "Discovery is
not supposed to be a shell game, where the hidden ball is moved round and round
and only revealed after so many false guesses are made and so much money is
squandered." "[T]here is such a thing as discovery karma. Discovery misconduct
often may be seen as tactically advantageous at first. But just as our good and bad
deeds eventually tend to catch up with us, so do discovery machinations," the
court concluded.

In 2007 *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and, in 2009,
*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) were decided. Those two decisions, citing
"judicial experience and common sense" as a standard with the realities of the

timing of discovery and the dilemma facing the Magistrate's and the Trial Court's

supervisory challenges. *See Bell Atlantic Corp. v. Twombly,* supra at footnote 6:

"[6]The dissent takes heart in the reassurances of plaintiffs' counsel that discovery would be " ' "phased" ' " and "limited to the existence of the alleged conspiracy and class certification." Post, at 24. But determining whether some illegal agreement may have taken place between unspecified persons at different ILECs (each a multibillion dollar corporation with legions of management level employees) at some point over seven years is a sprawling, costly, and hugely time-consuming undertaking not easily susceptible to the kind of line drawing and case management that the dissent envisions. Perhaps the best answer to the dissent's optimism that antitrust discovery is open to effective judicial control is a more extensive quotation of the authority just cited, a judge with a background in antitrust law. Given the system that we have, the hope of effective judicial supervision is slim: "The timing is all wrong. The plaintiff files a sketchy complaint (the Rules of Civil Procedure discourage fulsome documents), and   discovery is launched.  A judicial officer does not know the details of the case the parties will present and in theory cannot know the details. Discovery is used to find the details. The judicial officer always knows less than the parties, and the parties themselves may not know very well where they are going or what they  expect to find. A magistrate supervising discovery does not—cannot—know the expected productivity of a given request, because the nature of the requester's claim and the contents of the files (or head) of the adverse party are unknown. Judicial officers cannot measure the costs and benefits to the requester and so cannot isolate impositional requests. Requesters have no reason to disclose their own estimates because they gain from imposing costs on rivals (and may lose from an improvement in accuracy). The portions of the Rules of Civil Procedure calling on judges to trim back excessive demands, therefore, have been, and are doomed to be, hollow. We cannot prevent what we cannot detect; we cannot detect what we cannot define; we cannot define 'abusive' discovery except in theory, because in practice we lack essential information." Easterbrook, Discovery as Abuse, 69 B. U. L. Rev. 635, 638–639 (1989).

Plaintiffs/ Appellants suggest that the Record reveals an effort to use the

disclosure mandate of Fed. R. Civ. P. 26(a) as Motion in Limine rather than an

attempt to secure discovery in defense of a claim. Turning a "Gimlet Eye" to the

instant record on appeal for the reasons stated constitutes discovery abuse when

the hallmark provision of the parties acting in good faith in conducting discovery

fades due to asserting prejudice for late disclosures is made but is vacuous in

purpose or result as evidenced in this Record on Appeal. Courts have discretion to

determine whether the violation was substantially justified or harmless. Federal

courts have developed four- and five-factor tests to make this determination.

Compare, e.g., *Esposito v. Home Depot U.S.A., Inc.*, 590 F.3d 72, 78 (1st Cir.

2009):

(five-factor test evaluates (1) history of the litigation; (2) sanctioned party's
need for the precluded evidence; (3) sanctioned party's justification for late
disclosure; (4) objecting party's ability to cure adverse effects of late disclosure,
including the extent of surprise or prejudice; and (5) late disclosure's impact on
the court's docket), *with Reliance Ins. Co. v. La. Land & Expl. Co.*, 110 F.3d 253,
257 (5th Cir. 1997) (four-factor test evaluates (1) importance of expert's opinion
testimony, (2) prejudice to the objecting party, (3) possibility of curing the
prejudice by a continuance, and (4) the explanation for party's failure to comply
with discovery order). The differences between these tests are largely semantic;
their general purpose is to balance the defaulting party's explanation for failing
to timely disclose the expert report with any resulting   prejudice to the
objecting party and the court caused by the late disclosure.

Even when courts determine that a sanction is warranted, Rule 37(c)(1)(C)

provides courts the discretion to craft sanctions less severe than total exclusion,

such as the imposition of fines and costs. In particular, if the exclusion would lead

to dismissal—because the expert's testimony is required for the plaintiff to make a

prima facie case—then the justification for exclusion must be <u>more robust. In</u>

<u>*Esposito*,the appellate court reversed the lower court's exclusion of expert</u>

<u>testimony for the plaintiff's failure to formally disclose the expert before the court-</u>

<u>imposed deadline. Where the plaintiff had missed only one deadline and did not</u>

45

seem to be engaged in gamesmanship, the missed deadline more likely warranted the imposition of fines or costs, not exclusion leading to dismissal of the case in its entirety. 590 F.3d at 80. (Emphasis supplied.)

As the factual record of the case illustrates Judge Teresa J. James Orders of 9/3/2015 (Doc. 73); 3/23/2016 (Doc. 134) and 4/1/2016 determined de minimus prejudice shown due to late disclosures as alleged by Ford in their Motions to Strike. Even in the last Order where Judge James allowed for additional opportunity for the Defendant to take Depositions of individuals that they had complained had denied them due to late disclosure were Decedent Plaintiff's treating physicians and medical providers for care due to the injuries and resultant death she sustained in the 12/28/2012 accident was allowed additional time to take their depositions. As noted in *Morel v. Daimler-Chrysler Corp.,* 259 F.R.D. 17,20 (D.P.R. 2009) that another consideration is whether the prejudice for a "late" disclosure can be cured. Defendant as previously noted was provided actual notice. If the objecting party has adequate time to conduct supplemental expert discovery and pair of cross-examination prior to trial, the courts may conclude that a sanction is unwarranted. And when the objecting party fails to request the deposition of the new expert, or fails to depose any of the previously disclosed experts, the objecting party's claim of prejudice will be unpersuasive. [In this case it should be noted that the Plaintiffs in their "Certificate of Compliance" of March 3, 2015, Exhibit- "B" in accordance with the scheduling order and as early as 3 weeks after they had filed their Complaint in September of 2014 they designated

[disclosed?] the Decedent Plaintiff's treating physicians and her autopsy report of cause of death which Plaintiffs' Counsel provided Defendant's Counsel of Record with medical authorizations to obtain all of the Decedent Plaintiff's medical records. Plaintiffs respectfully request the Appellate Court to take judicial notice that there can be no prejudice to the Defendant as a litigant in this wrongful death action for product liability of Defendant's product, as to the items: (1) Decedent's medical records of her medical providers and their names for the purpose of determining whether or not the defendant wish to take their depositions in the case; (2) a Deposition Exhibit (See Exhibit- "H" Re:    Plaintiffs' Rule 59/60 Motions to Vacate and Set Aside Judgment – "Parcells' Deposition Exhibit 16- Medical Records of Dr. West re: Driver Ms. Emma Edwards" (bruising pattern/seatbelt sign)  pertaining to the medical records of the driver the vehicle in which the Decedent Plaintiff was a passenger indicating that   the bruising pattern to the driver's chest was consistent with evidence that a seatbelt had been worn due to the bruising pattern on her chest and this fact was significant to plaintiff's expert in rendering his report an opinion that plaintiff's bruising pattern was a fact that the air bag rather than her seatbelt was the precipitating force that caused the decedent Plaintiff's injuries and her resultant death; and (3.)  Ram Krishnaswami's Exhibit No. 4 (Docs. 157 and 158- R.O.A. Joint Appendix Sealed Vol.11, Page 491.).   made a part of his Expert Report of September 25, 2015; and of importance and materially relied upon by Plaintiff's engineering expert McLellan.

*Pioneer Inv. Services v. Brunswick Assocs.*, 507 U.S. 380 (1993) relied upon the Court on this case is not *stare decisis* for two substantive reasons in applying the *Dix factors*, akin to the *Ehrenhaus factors*: 1) the parties involved are substantially different, to-wit: *"5) that, in light of Berlin's business sophistication and has actual knowledge of the bar date, it would not be improper to penalize respondents for the neglect of their counsel";* and 2) the Ninth Circuit Court remanded the case to the District Court with instructions to conduct a due process for dire hearing which did not occur on this Record , and for which the Plaintiffs request the Court to set Plaintiffs' Motions for an evidentiary hearing and for oral argument on their Motions.

In *The Proctor& Gamble Company v. Haugen*, 427 F. 3d 727 (10th Cir. 2005):"Before imposing dismissal as a sanction, a district court should ordinarily evaluate the following factors, on the record: (1) the degree of actual prejudice to the [other party]; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court where the party in advance of the dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions." *Gripe v. City of Enid*, 312 F.3d 1184,1187 (10th Cir. 2002) (quoting *Ehrenhaus*, 965 F.2d at 921).  "This list", hereinafter referred to as the *Ehrenhaus* factors, "is not exhaustive, nor are the factors   necessarily" of equal weight. *Chavez,* 402 F.3d at 1044.  "Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal an appropriate sanction."  (Internal  quotation marks omitted).

48

## VI.

## CONCLUSION

Plaintiffs/Appellants accordingly respectfully request the Panel to reverse the District Court's ruling granting Defendant's Motion for Summary Judgment by default; to vacate the District Court's ruling granting Defendant's Daubert Motions by default, and such other relief or remedy/sanction determined by this Honorable Appellate Court on this Record of Appeal to be proper, just and warranted in the premises.

## VII.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is requested in this matter as oral argument may assist the Panel in determining the evidentiary issues and case context in its review on appeal Plaintiffs/Appellants assertions of error claimed on appeal.

Respectfully submitted,

 /s/ Eric Kjorlie
Eric Kjorlie, KS #08065
Attorney at Law
Historic Tinkham Veale Place
827 SW Topeka Blvd.
Topeka, Kansas 66612-1608
(785) 232-6868 (O)
(785) 232-6878 (F)
 Attorney for Plaintiffs/Appellants

## COUNSEL'S CERTIFICATE OF SERVICE AND DIGITAL SUBMISSION

I, Eric Kjorlie, Counsel for the Appellants, do hereby certify that a copy of the above and foregoing BRIEF OF APPELLANTS' was electronically served on this 31st day of July, 2017, in searchable (native) PDF format, by using the Court's CM/ECF system sending notification of such filing together with two (2) hard copies of same to the following:

        Ben K. Upp, bupp@trdlp.com
        Rodney E. Loomer rloomer@trdlp.com
        Sherry A. Rozell, srozell@trdlp.com,
        Steven E. Ward, sward@trdlp.com

Further, that seven (7) hard copies of the BRIEF OF APPELLANTS were served on same date upon the Clerk of the Tenth Circuit Court of Appeals pursuant to 10th Cir. R. 30.1(A)(2) by placing same in the U.S. Mail, 2-Day Express Mail/ Delivery Guaranteed, postage prepaid, which is required to be received within two (2) business days of the electronic submission addressed to:

        The Honorable Elizabeth A. Shumaker, Clerk
        OFFICE OF THE CLERK
        U.S. Court of Appeals for the Tenth Circuit
        Byron White United States Courthouse
        1823 Stout Street
        Denver, Colorado 80257

Two (2) hard copies of the BRIEF OF APPELLANTS on same date were served by U.S. Mail, postage prepaid addressed to:

Ben K. Upp
Rodney E. Loomer
Sherry A. Rozell
Seven E. Ward
Turner, Reid, Duncan, Loomer
1355 East Bradford Parkway
Suite A, Springfield, MO  65804
P.O. Box 4043
Springfield, MO  65808-4043

                                s/Eric Kjorlie
                                ERIC KJORLIE, #08065

With further certification to the Court that with respect to the foregoing that: (1) all required privacy redactions have been made pursuant to 10th Cir. R. 25.5; (2) that if required to file additional hard copies, that the ECF submission is an exact copy of those documents; and (3) that the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, with Symantec Norton Antivirus Auto-Protect, continuously updated and, according to the program, are free of viruses.

s/Eric Kjorlie
ERIC KJORLIE, #08065

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ESTATE OF BETTY LOU McDERMED,  )
Deceased, by and through DIANE L.  )
McDERMED, ADMINISTRATOR, as  )
her representative, and PAUL C.  )
McDERMED AND GEORGIA LEE  )
IOCCO, Individually,  )
                        )
           **Plaintiffs,**  )
                        )          **CIVIL ACTION**
v.  )
                        )          **No. 14-2430-CM**
FORD MOTOR COMPANY,  )
a Delaware Corporation,  )
                        )
          **Defendant.**  )
_____)

## MEMORANDUM AND ORDER

This case arises from a vehicle collision that occurred on December 28, 2012 in Topeka,

Kansas, between Emma Edwards, driving a 1999 Ford Contour, and Mykol Barksdale, driving a 1993

Toyota Camry. Decedent Betty McDermed ("the deceased") was in the front passenger seat of

Edwards's Ford Contour. Plaintiffs bring this product liability action against Ford Motor Company,

alleging strict liability based on an alleged design defect and failure to warn. The court takes up the

following motions: (1) Ford Motor Company's Motion to Exclude the Expert Testimony of Plaintiffs'

Expert Witness Mr. Shawn Parcells (Doc. 101); (2) Ford Motor Company's Motion to Exclude the

Expert Testimony of Plaintiffs' Expert Witness Mr. David McLellan (Doc. 102); (3) Plaintiffs' Motion

for Leave for Additional Time to Respond to Defendant Ford's Motion to Exclude the Testimony of

Plaintiffs' Expert Witness Mr. Shawn Parcells (Doc. 111); and (4) Plaintiffs' Motion for Leave for

Additional Time to Respond to Defendant Ford's Motion to Exclude Testimony of Plaintiffs' Expert

Witness Mr. David McLellan (Doc. 112). The court will first take up plaintiffs' motions for leave to file out of time their responses to defendant's motions seeking to exclude plaintiffs' experts.

## I.    Plaintiffs' Motions for Leave to File Out of Time

### A.    Background

Defendant filed its Motion to Exclude the Expert Testimony of Plaintiffs' Expert Witness Mr. Shawn Parcells (Doc. 101) and Motion to Exclude the Expert Testimony of Plaintiffs' Expert Witness Mr. David McLellan (Doc. 102) (collectively, "defendant's motions to exclude plaintiffs' experts") on February 1, 2016. Under D. Kan. Rule 6.1(d)(1), plaintiffs' responses to defendant's motions to exclude plaintiffs' experts were due on February 15, 2016. On February 18, 2016, three days after plaintiffs' response deadline had passed, plaintiffs filed Plaintiffs' Motion for Leave for Additional Time to Respond to Defendant Ford's Motion to Exclude the Testimony of Plaintiffs' Expert Witness Mr. Shawn Parcells (Doc. 111) and Plaintiffs' Motion for Leave for Additional Time to Respond to Defendant Ford's Motion to Exclude Testimony of Plaintiffs' Expert Witness Mr. David McLellan (Doc. 112) (collectively, plaintiffs' "motions for leave to file responses to defendant's *Daubert* motions out of time").

Both motions for leave to file responses to defendant's *Daubert* motions out of time explained that plaintiffs' counsel filed the request after the response deadline passed because plaintiffs' counsel miscalculated the response deadlines by mistakenly applying the version of Fed. R. Civ. P. 6(d) that was effective in 2005. (*See* Doc. 111 at 1; Doc. 112 at 1.) Both motions for leave to file responses to defendant's *Daubert* motions out of time also requested extensions of the respective response deadlines up to March 14, 2016 because plaintiffs' counsel needed more time to review recently provided discovery that plaintiffs' counsel believed was pertinent to plaintiffs' claims. (Doc. 111 at 2; Doc. 112 at 2.) In Plaintiffs' Motion for Leave for Additional Time to Respond to Defendant Ford's

Motion to Exclude the Testimony of Plaintiffs' Expert Witness Mr. Shawn Parcells, plaintiffs also

stated that plaintiffs' expert Mr. Parcells had been unable to review the discovery until that point

because he was recovering from complications from surgery. (Doc. 111 at 2.)

Defendant opposes plaintiffs' motions and asks the court to grant defendant's underlying

motions as unopposed because of plaintiffs' failure to show excusable neglect in missing the deadline,

particularly in light of plaintiffs' repeated failure to request extensions until after the deadlines passed

and other late filings in this case and others. Plaintiffs did not file replies to defendant's responses.

Plaintiffs ultimately filed their responses to defendant's motions to exclude plaintiffs' experts on

March 14, 2016. (*See* Docs. 130, 132.) Defendant substantively replied to the motions. (*See* Docs.

145, 147.)

### B. Plaintiffs' Counsel's Additional Late Filings and Delays

Plaintiffs' counsel has established a pattern of missing deadlines in this case, as shown below.

March 2, 2015 was the original deadline for plaintiffs to serve expert disclosures under Fed. R.

Civ. P. 26(a)(2). (Doc. 73 at 2.) On that day, plaintiffs served a designation of their expert witness

David McLellan, his expert report and attachments, and a "Certificate of Compliance." (*Id.*) On April

15, 2015, the parties filed a joint motion to extend the expert witness deadlines. (*Id.* at 3.)

Specifically, the motion requested extending defendant's deadline for designating its expert and

producing the expert's report, and both parties' respective deadlines for producing their experts for

deposition. (*Id.*) The motion, however, did not request an extension of plaintiffs' already expired

deadline to serve their expert disclosures or report. (*Id.* at 3.) Judge James granted the joint motion.

(*See* Doc. 32.)

On June 11, 2015, plaintiffs' counsel emailed to defendant's counsel the "'final report of David

R. McLellan dated June 11, 2015.'" (Doc. 73 at 3 (quoting Doc. 55-3).) Plaintiffs' counsel

represented that he was "providing the expert's cover page to the final report as notice that we will provide the expert's additional supportive material to you on Monday, June 22, 2015." (*Id.* (quoting Doc. 55-3).)  Plaintiffs' counsel also filed a "Supplemental Certificate of Compliance." (*Id.*)

On June 22, 2015, the parties filed a Joint Motion to Extend Discovery Deadlines (Doc. 41), which requested extensions of all case deadlines, including a late request to extend plaintiffs' March 2, 2015 expert disclosures and reports deadline. (Doc. 73 at 4.)  On June 23, 2015, Judge James held a status and scheduling conference. (*Id.*)  It became clear that plaintiffs had served their June 11, 2015 expert designations and represented that they would serve additional supportive expert materials and another expert designation and report on June 22, 2015 without formal objection by defendant. (*Id.* at 4–5.)  Nonetheless, the court declined to grant an extension of plaintiffs' March 2, 2015 deadline to designate experts and "admonished counsel that requests for extensions of deadlines must be made before expiration of the deadlines." (*Id.* at 5.)

On June 24, 2015, Judge James issued an amended scheduling order, granting in part the joint motion to extend case deadlines.  The court stated, "Plaintiffs' expert disclosures deadline has expired. No further expert designations or disclosures will be allowed after the date of this scheduling order." Nonetheless, two days later on June 26, 2015, with no explanation to the court, plaintiffs' counsel filed supplemental attachments to plaintiffs' expert reports. (*See* Doc. 5.)  On July 15, 2015, defendant filed a motion to strike the supplemental attachments. (Doc. 53.)  On August 3, 2015, Judge James issued a memorandum and order denying defendant's motion to strike due to a lack of prejudice and because only four days passed after the requested extension. (*See generally* Doc. 73.)

On January 14, 2016, defendant filed Ford Motor Company's Motion to Strike Plaintiffs' Untimely Supplemental Rule 26 Disclosures (Doc. 96) ("defendant's motion to strike plaintiffs' untimely supplemental Rule 26 disclosures").  On February 2, 2016, in response to Doc. 96 and five

-4-

days past the response deadline, plaintiff filed Plaintiffs' Response to Defendant Ford Motor

Company's Motion to Strike Plaintiffs' Untimely Supplemental Rule 26 Disclosures and

Memorandum of Law in Opposition (Doc. 103). Plaintiffs did not request leave to file the response

out of time, and the response did not address why it was late. (*See generally* Doc. 103.)

On February 23, 2016, plaintiffs filed Plaintiffs' Response to Defendant Ford Motor

Company's (Second) Motion to Strike Plaintiffs' Response to Their Untimely Supplemental Rule 26

Di[s]closures and Memorandum of Law in Opposition (Doc. 114), purporting to respond to Doc. 108.

Plaintiffs' brief did not actually address why they were late in filing a response to Doc. 108, however.

Instead, the response argued the underlying merits of defendant's motion to strike plaintiffs' untimely

supplemental Rule 26 disclosures (Doc. 96).

On March 23, 2016, Judge James denied Doc. 108 and Doc. 121 and considered Doc. 114 on

its merits. Judge James allowed plaintiff to file the response (Doc. 103) out of time to consider the

underlying motion (Doc. 96) on the merits. On April 1, 2016, Judge James issued an order granting in

part and denying in part Doc. 96. (*See* Doc. 143.)

Defendant points to other cases in which plaintiffs' counsel has missed response and other

important case deadlines while practicing in this court. (*See* Doc. 119 (citing *McDermed v. Hill*, No.

09-2004-KMH, 2010 WL 3862032 (D. Kan. Sept. 27, 2010) and *Bell v. City of Topeka, Kans.*, No. 06-

4026-JAR, 2007 WL 628188 (D. Kan. Feb. 26, 2007).)

### C. Analysis

Under D. Kan. Rule 6.1(d):

Unless the court orders otherwise, the following time periods apply to the filing of
responses and replies. These time periods include the additional 3-day period allowed
under Fed. R. Civ. P. 6(d) and, therefore, apply regardless of the method of service.

    (1) *Non-dispositive motions.* Responses to non-dispositive motions
        (motions other than motions to dismiss, motions for summary

> judgment, motions to remand, or motions for judgment on the
> pleadings) must be filed and served within 14 days.  Replies must be
> filed and served within 14 days of the service of the response.

Defendant's motions to exclude the testimony of plaintiffs' expert witnesses are non-dispositive;

therefore, plaintiffs' responses were due 14 days after defendant filed the motions—on February 15,

2016.  Plaintiffs filed the motions extensions of time on February 18, 2016, three days after the

deadline had already expired.

Under D. Kan. Rule 6.1(a):

> All motions for an extension of time to perform an act required or allowed to be done
> within a specified time must show:
>
> > (1) whether there has been prior consultation with other parties and the
> > views of other parties;
> > (2) the date when the act was first due;
> > (3) if prior extensions have been granted, the number of extensions
> > granted and the date of expiration of the last extension; and
> > (4) the cause for the requested extension.
>
> **Parties must file the motion *before* the specified time expires.  Absent a showing of
> excusable neglect, the court will not grant extensions requested after the specified
> time expires.**

*Id.* (emphasis added).  Therefore, before allowing plaintiffs to file their response to defendant's

motions out of time, the court must find plaintiffs' counsel's neglect excusable.

Excusable neglect is a "somewhat elastic concept," and it is not limited strictly to omissions

caused by circumstances beyond the movant's control.  *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*

*L.P.*, 507 U.S. 380, 391–92 (1993).  However, "inadvertence, ignorance of the rules, or mistakes

construing the rules do not usually constitute 'excusable' neglect."  *Id.* at 392.  In determining whether

neglect is excusable, the court should consider "all relevant circumstances surrounding the party's

omission," including these four specific factors:

(1) the danger of prejudice to the opposing party;

(2) the length of the delay and its potential impact on judicial proceedings;

(3) the reason for the delay, including whether it was within the reasonable control of the

movant; and

(4) whether the movant acted in good faith.

*Id.* at 394–95. Most important in determining whether neglect is excusable is the movant's fault in the

delay. *Jennings v. Rivers*, 394 F.3d 850, 856 n.5 (10th Cir. 2005) (citing *United States v. Torres*, 372

F.3d 1159, 1163 (10th Cir. 2004)). Further, a court "may take into account whether the mistake was a

single unintentional incident," as opposed to a pattern of deliberate dilatoriness and delay, and

"whether the attorney attempted to correct his action promptly after discovering the mistake." *Id.*

(citing *Hancock v. Okla. City*, 857 F.2d 1394, 1396 (10th Cir. 1988)).

### 1. Danger to the Opposing Party

In applying the first factor above—danger of prejudice to the opposing party—neither party

offers a position on whether defendant suffered prejudice from plaintiffs' untimely request for an

extension of time to respond or plaintiffs' ultimate late responses to defendant's motions. There does

not appear to be any evidence of prejudice to defendant if the court were to allow plaintiffs to file a

response out of time, particularly because defendant already replied substantively to plaintiffs' late

filed responses. Therefore, the danger of prejudice to defendant is low.

### 2. The Length of the Delay and Its Potential Impact on Judicial Proceedings

In applying the second factor above—the length of delay and its potential impact on judicial

proceedings—while this was only a three-day delay, the cumulative effect of plaintiffs' delays in this

case weighs against a finding that plaintiffs' neglect is excusable. Plaintiffs' delays have prompted

extensive briefing by defendant on several occasions, at one time even prompting a motion to strike a

late response to a motion to strike an untimely filing. As discussed above, beginning as far back as

April 2015, plaintiffs' counsel has regularly missed deadlines and submitted filings and other papers

out of time without seeking leave. These actions have wasted judicial resources, and plaintiffs'

counsel's history does not lead the court to believe plaintiffs' counsel will change his ways.

### 3. The Reason for the Delay

In applying the third factor—the reason for the delay—which is the most important reason the

court analyzes, plaintiffs' counsel states that he applied the 2005 version of Fed. R. Civ. P. 6, which,

he states, led to the miscalculation.[1] Specifically, plaintiffs' counsel states that the motion was

"[un]timely pursuant to Fed. R. Civ. P. 6 and D. Kan. Rule 6 due to their Counsel's misapplication of

the timing rules by incorrectly applying the former three (3) day rule authorized by former Fed. R. Civ.

P. 6 (2005 Amendment) to the calculation for which the instant Motion here filed on February 18,

2016 would have otherwise been timely[.]" (Doc. 111 at 1.) The court is not persuaded (1) that this is

the actual reason for the miscalculation or (2) that the miscalculation supports a finding of excusable

neglect.

Whether plaintiffs' counsel applied the 2005 or 2016 version of Fed. R. Civ. P. 6, assuming

plaintiffs' counsel applied D. Kan. R. 6.1(d) (which governs specific calculations for motion response

and reply deadlines), plaintiffs' counsel should have realized that the response deadlines for the

motions to exclude plaintiffs' experts was February 15, 2016. District of Kansas Rule 6.1(d)

specifically states that "[t]hese time periods include the additional three-day period allowed under Fed.

R. Civ. P. 6(e) and, therefore, apply regardless of the method of service." Review and application of

the 2005 version of the District of Kansas local rules leads to the same result. Therefore, under the

2005 or 2016 versions of Fed. R. Civ. P. 6 and D. Kan. R. 6.1, or any combination thereof, plaintiffs'

---

[1] Plaintiff also provided reasons to support a finding of good cause for granting the motion for an extension of time beyond the date of the late filing, such as voluminous discovery and Mr. McLellan's recent surgery, but these issues do not factor into the court's analysis of whether plaintiffs' counsel's neglect in filing out of time was excusable.

counsel should have reached the conclusion that the response deadline was February 15, 2016, *not* February 18, 2016.  In any event, miscalculation of deadlines does not support a finding of excusable neglect.  *Pioneer Inv. Servs. Co.*, 507 U.S. at 392 (stating that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect").  Therefore, plaintiffs' counsel's proffered reason for the delay weighs very heavily against a finding of excusable neglect.

### 4. Whether the Movant Acted in Good Faith

In applying the fourth factor, the court looks to whether plaintiffs' counsel makes his request for leave to file out of time in good faith.  This factor also weighs against plaintiffs.  Plaintiffs' counsel has shown a pattern of missing deadlines and allowing them to pass in this case and others, even after court admonishment.  As noted above, the reasoning behind plaintiffs' counsel's miscalculation does not makes sense.  Further, even assuming plaintiffs' counsel's mistake truly was inadvertent, plaintiffs' counsel was on express notice of his mistake by at least February 16, 2016.  On February 16, 2016, defendant filed Doc. 108, its motion to strike plaintiffs' untimely response (Doc. 103) to defendant's motion to strike plaintiffs' untimely supplemental response (Doc. 96).  Although plaintiffs' counsel is always charged with knowledge of the local rules, defendant's briefing expressly put plaintiffs' counsel on notice that D. Kan. Rule 6.1(d) mandated a response to a non-dispositive motion within 14 days, irrespective of application of the three-day rule.  (Doc. 108 at 1.)  Nonetheless, plaintiffs' counsel still waited an additional two days before filing plaintiffs' motion for leave to file plaintiffs' responses out of time.  These actions, particularly in combination, are indicative of bad faith, which weighs heavily against a finding of excusable neglect.

Generally the court prefers to rule on the merits of motions before it.  Here, however, after weighing the four factors above, the court finds that plaintiffs have failed to show that their counsel's neglect in filing their motions to file out of time was excusable.  Therefore, the court denies Plaintiffs'

Motion for Leave for Additional Time to Respond to Defendant Ford's Motion to Exclude the

Testimony of Plaintiffs' Expert Witness Mr. Shawn Parcells (Doc. 111) and Plaintiffs' Motion for

Leave for Additional Time to Respond to Defendant Ford's Motion to Exclude Testimony of

Plaintiffs' Expert Witness Mr. David McLellan (Doc. 112).  The court will not consider plaintiffs'

untimely responses (Docs. 130 and 132) to defendant's motions to exclude plaintiffs' experts.

## II.    Defendant's Motions to Exclude the Testimony of Plaintiffs' Experts

The court next turns to the underlying motions: Ford Motor Company's Motion to Exclude the

Expert Testimony of Plaintiffs' Expert Witness Mr. Shawn Parcells (Doc. 101) and Ford Motor

Company's Motion to Exclude the Expert Testimony of Plaintiffs' Expert Witness Mr. David

McLellan (Doc. 102).

In Ford Motor Company's Motion to Exclude the Expert Testimony of Plaintiffs' Expert

Witness Mr. Shawn Parcells (Doc. 101), defendant argues that Mr. Parcells is not qualified to offer an

opinion as to the medical cause of the deceased's injuries and subsequent death.  (*Id.* at 3.)  Defendant

also argues that Mr. Parcells's opinions are unreliable and not supported by valid scientific principles.

(*Id.* at 4.)  Therefore, defendant asks the court to exclude Mr. Parcells from offering any testimony at

trial.  (*Id.* at 1.)

In Ford Motor Company's Motion to Exclude the Expert Testimony of Plaintiffs' Expert

Witness Mr. David McLellan (Doc. 102), defendant requests that the court exclude Mr. McLellan from

offering any testimony at trial.  (*Id.* at 1.)  Defendant argues that Mr. McLellan is not qualified to offer

medical or biomechanical opinions, and the court should prevent him from offering any opinions at

trial that the deceased's injuries were (1) caused by the deploying airbag, (2) that the deceased's injury

patterns are consistent with contact with the deploying airbag, and (3) any other medical or

biomechanical opinion.  (Doc. 102 at 7.)  Defendant also argues that Mr. McLellan is not qualified to

Case 2:14-cv-02430-CM   Document 169   Filed 08/03/18   Page 11 of 12

offer any opinions regarding the design or performance of the airbags in the subject vehicle. (*Id.*) Defendant argues that Mr. McLellan does not have the requisite experience, training, or education to qualify him to testify generally about airbags and sensing systems. (*Id.*) Finally, defendant argues that Mr. McLellan's opinions regarding defects in the subject vehicle's passenger seat belt restraint are unreliable. (*Id.* at 10.) Defendant argues that they should be excluded because (1) there is too great of an analytical gap between the data and the offered opinion, and (2) the tests he used in making his conclusion were unreliable. (*Id.* at 11–19.) Defendant argues that the court should grant defendant's motions to exclude plaintiffs' experts' testimony as unopposed under D. Kan. Rule 7.4.

> Under D. Kan. Rule 7.4,
>
> Absent a showing of excusable neglect, a party or attorney who fails to file a responsive brief or memorandum within the time specified in D. Kan. Rule 6.1(d) waives the right to later file such brief or memorandum. If a responsive brief or memorandum is not filed within the D. Kan. Rule 6.1(d) time requirements, the court will consider and decide the motion as an uncontested motion.

As discussed above, plaintiffs' counsel failed to show that his neglect in timely responding to defendant's motions was excusable. Therefore, plaintiffs have waived their right to file responsive briefs, and the court considers defendants' motions as unopposed. Considering defendant's motions to exclude the expert testimony of plaintiffs' experts unopposed, the court grants Ford Motor Company's Motion to Exclude the Expert Testimony of Plaintiffs' Expert Witness Mr. Shawn Parcells (Doc. 101) and Ford Motor Company's Motion to Exclude the Expert Testimony of Plaintiffs' Expert Witness Mr. David McLellan (Doc. 102).

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Leave for Additional Time to Respond to Defendant Ford's Motion to Exclude the Testimony of Plaintiffs' Expert Witness Mr. Shawn Parcells (Doc. 111) and Plaintiffs' Motion for Leave for Additional Time to Respond to

Defendant Ford's Motion to Exclude Testimony of Plaintiffs' Expert Witness Mr. David McLellan (Doc. 112) are denied.

**IT IS FURTHER ORDERED** that Ford Motor Company's Motion to Exclude the Expert Testimony of Plaintiffs' Expert Witness Mr. Shawn Parcells (Doc. 101) and Ford Motor Company's Motion to Exclude the Expert Testimony of Plaintiffs' Expert Witness Mr. David McLellan (Doc. 102) are granted.

Dated this 3rd day of August, 2016 at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ESTATE OF BETTY LOU McDERMED,  )
Deceased, by and through DIANE L.  )
McDERMED, ADMINISTRATOR, as  )
her representative, and PAUL C.  )
McDERMED AND GEORGIA LEE  )
IOCCO, Individually,  )
                                    )
          Plaintiffs,  )
                                    )        **CIVIL ACTION**
v.  )
                                    )      **No. 14-2430-CM**
FORD MOTOR COMPANY,  )
a Delaware Corporation,  )
                                    )
          Defendant.  )
_____)

## MEMORANDUM AND ORDER

This case arises from a vehicle collision that occurred on December 28, 2012 in Topeka,

Kansas, between Emma Edwards, driving a 1999 Ford Contour, and Mykol Barksdale, driving a 1993

Toyota Camry. Decedent Betty McDermed ("the decedent") was in the front passenger seat of

Edwards's Ford Contour. Plaintiffs bring this product liability action against Ford Motor Company

alleging strict liability based on an alleged design defect and failure to warn. Defendant Ford Motor

Company's Motion for Summary Judgment (Doc 99) is before the court.

## I.    Legal Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine

issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P.

56(c). A "genuine" factual dispute requires more than a mere scintilla of evidence. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial

burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986).  In making the summary judgment determination, the court must view the

evidence and reasonable inferences in the light most favorable to the nonmoving party.  *Adler v. Wal-*

*Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986)).  However, the nonmoving party may not rest on the pleadings

but must set forth specific facts.  *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d

1238, 1241 (10th Cir. 1990).  Ultimately, the court evaluates "whether the evidence presents a

sufficient disagreement to require submission to the jury or whether it is so one-sided that one party

must prevail as a matter of law."  *Liberty Lobby*, 477 U.S. at 252.

## II.    Facts

The following facts are undisputed or construed in the light most favorable to plaintiffs.

The subject vehicle complied with all applicable Federal Motor Vehicle Safety

Standards.

Emma Edwards, the owner and driver of the subject vehicle at the time of the accident,

admitted during her deposition that she only looked at the Owner's Manual once, in order to

change the time on the vehicle's clock.  Mrs. Edwards could not recall looking at any other

parts of the Owner's Manual prior to the accident.  Mrs. Edwards testified that the decedent

never asked Mrs. Edwards to look at the Owner's Manual and would never have had the

opportunity or a reason to review the Owner's Manual.

Plaintiffs retained two expert witnesses in this matter:  Mr. Shawn Parcells, who was to offer

opinions regarding the decedent's injuries, and Mr. David McLellan, who was to offer opinions

regarding alleged defects in the subject vehicle.  The court, however, granted Ford Motor Company's

Motion to Exclude the Expert Testimony of Plaintiffs' Expert Witness Mr. Shawn Parcells (Doc. 101)

and Ford Motor Company's Motion to Exclude the Expert Testimony of Plaintiffs' Expert Witness Mr.

Case 2:14-cv-02430-CM    Document 170    Filed 06/03/16    Page 3 of 7

David McLellan (Doc. 102). As such, the court has excluded Mr. Parcells and Mr. McLellan from offering expert opinions at trial in this case, and the court does not consider those experts' opinions in deciding this motion.[1] Plaintiffs have not identified other experts in this case.

### III.    Analysis

Plaintiffs have alleged two theories of recovery in the final pretrial order: (1) strict liability based on an alleged design defect and (2) strict liability failure to warn. (Doc. 98 ¶ 4.a.) Plaintiffs seek pecuniary, non-pecuniary, and punitive damages. Plaintiffs argue that the following conditions in the subject vehicle created dangerous conditions for occupants in the front passenger seat of the subject vehicle:

(1) The design of the seatbelt retractor resulted in a dangerous unsafe intermittent "freewheeling or free-reeling condition" which could allow the passenger's body to become unrestrained during an accident;

(2) The airbag sensors were not designed to ensure earliest possible airbag deployment to protect the passenger's body from exposure to the inflating airbag;

(3) Defendant should have used a "one-way clutch mechanism" to prevent the seat belt from free-reeling; and

(4) The shape of the passenger airbag could result in the airbag striking the abdomen of the passenger during an accident.

---

[1] In light of the court's decision granting Ford Motor Company's Motion to Exclude the Expert Testimony of Plaintiffs' Expert Witness Mr. David McLellan (Doc. 102), the proffered testimony contained in Mr. McLellan's affidavit attached as Exhibit G to plaintiffs' response is not admissible. Therefore, the court does not consider the affidavit in determining whether plaintiffs sufficiently dispute defendant's facts.

-3-

(Doc. 132 at 5.)  Specific to plaintiffs' failure to warn claim, plaintiffs also state that defendant should have included a warning in the Owner's Manual warning of the potential of the freewheeling or free-reeling condition of the front passenger seatbelt.

Defendant argues that all of plaintiffs' claims fail as a matter of law.  First, defendant argues that both of plaintiffs' claims fail because plaintiffs present no evidence that a defect in the product actually caused the decedent's injuries and subsequent death.  (Doc. 100 at 6–7.)  Second, defendant argues that plaintiffs' strict liability defective design claim fails because (1) plaintiffs cannot establish that the alleged defective condition in the subject vehicle caused the decedent's injuries and subsequent death and (2) plaintiffs cannot show that the subject vehicle was defective.  (*Id.* at 10–14.)  Third, defendant argues that plaintiffs' strict liability failure to warn claims fail because (1) plaintiffs cannot establish that an alleged failure to include a warning in the Owner's Manual proximately caused the decedent's injuries or subsequent death; (2) plaintiffs' post-sale warnings claim fails as a matter of law because Kansas does not recognize a post-sale duty to warn under a strict liability theory; and (3) plaintiffs have not presented any evidence that defendant had actual or constructive knowledge of the alleged defect.  (*Id.* at 14–18.)  Finally, defendant argues that plaintiffs' punitive damages claim fails because (1) plaintiffs' underlying tort claims fail, and (2) plaintiffs have not presented evidence that defendant acted willfully or wantonly toward the decedent.  (*Id.* at 18–19.)

A product is considered defective under Kansas law if: (1) a flaw is present in the product at the time it is sold; (2) the producer or assembler of the product fails to adequately warn of a risk or hazard related to the way the product was designed; or (3) the product, although perfectly manufactured, contains a defect that makes it unsafe. *See Delaney v. Deere & Co.*, 999 P.2d 930, 934, 936 (Kan. 2000).  So, a product is in a defective condition if it has a defect in manufacturing, warning, or design,

and such defect existed at the time the product left the manufacturer's or seller's hands. *See* PIK 4th Civ. 128.17.

To succeed on their defective product claim, plaintiffs must prove (1) that the decedent's injury resulted from a condition of the product; (2) the condition was an unreasonably dangerous one; and (3) the condition existed at the time it left defendant's control. *Samarah v. Danek Med., Inc.*, 70 F. Supp. 2d 1196, 1202 (D. Kan. 1999) (quoting *Jenkins v. Amchem Prods., Inc.*, 886 P.2d 869, 886 (Kan. 1994)). Regarding the second element, Kansas courts require that a product be both "defective and unreasonably dangerous." *See id.* "Generalized assertions regarding a product's alleged defective nature are insufficient; instead, Kansas law requires plaintiff to establish the existence of a *specific* defect to prevail on a defective product claim." *Id.* (citing *Jenkins*, 886 P.2d at 889).

Under Kansas law, a product, while perfectly manufactured, may "still be rendered unreasonably dangerous through failure to warn of its dangerous characteristics." *McCroy v. Coastal Mart, Inc.*, 207 F. Supp. 2d 1265, 1274 (D. Kan. 2002). Therefore, a product may be defective "if there is either a complete failure to warn of a particular risk or if the warnings given are insufficient." *Id.* (citing *Brand*, 978 F. Supp. at 1389.)

### A. Strict Liability Claims

In light of the court's excluding plaintiffs' experts, plaintiffs' strict liability claims fail as a matter of law because plaintiff cannot provide admissible evidence regarding the alleged defect or dangerous conditions and whether those alleged defects or dangerous conditions caused the decedent's injuries and death. The test for determining whether expert testimony is required under Kansas law is whether the subject matter is too complex to fall within the common knowledge of the jury and is "beyond the capability of a lay person to decide." *Hare v. Wendler*, 949 P.2d 1141, 1148 (Kan. 1997). Here, the court does not believe that the jury would be able to understand without expert testimony

"the nature of the standard of care required of defendant and the alleged deviation from the standard." *Ho v. Michelin N. Am., Inc.*, 520 F. App'x 658, 667 (10th Cir. 2013) (citing *Gaumer v. Rossville Truck & Tractor Co.*, 202 P.3d 81, 84 (Kan. 2009)). The alleged design defects at issue, defective automobile seatbelt retractor and front passenger airbag design, are well outside of the common knowledge of the jury. Furthermore, whether the evidence supports a finding that those alleged design defects or dangerous conditions caused the decedent's particular injuries and subsequent death are well outside of the common knowledge of the jury. *See id.* at 668 (affirming district court's summary judgment regarding plaintiff's strict liability failure to warn claim because there was no evidence that the alleged dangerous condition was present in the incident at issue). Without expert testimony regarding these issues, plaintiffs' strict liability claims fail.

Even if plaintiffs could provide evidence regarding the alleged defects at issue, plaintiffs' strict liability failure to warn claim fails for additional reasons. Plaintiffs offer no evidence that defendant's failure to include a warning in the Owner's Manual caused the decedent's injuries or subsequent death. With a strict liability failure to warn claim, a defendant's complete failure to include a warning creates a presumption in plaintiffs' favor that the warning was inadequate. *See Vanderwerf v. SmithKlineBeecham Corp.*, 529 F. Supp. 2d 1294, 1309 (D. Kan. 2008). If defendant "provides credible evidence to rebut the presumption, the presumption disappears and the burden shifts back to plaintiffs to affirmatively prove causation." *Id.*

Defendant provides evidence that a warning in the subject vehicle's Owner's Manual would not have prevented the decedent's injuries or subsequent death. The driver of the vehicle, Mrs. Edwards, testified that she had only looked at the Owner's Manual once to change the time on the clock, and she did not recall looking at any other parts of the manual. She also testified that the decedent had not asked to look at the Owner's Manual, and she never had the opportunity or a reason to review it. This

evidence sufficiently rebuts plaintiffs' presumption of causation.  Plaintiffs fail to show any other

evidence on this issue creating a genuine issue of material fact.

Furthermore, to the extent plaintiffs have pleaded a post-sale duty to warn claim, it fails as a

matter of law.  It is well-established that a post-sale duty to warn under a strict liability theory is not

recognized under Kansas law.  *See Patton v. Hutchinson Wil-Rich Mfg. Co.*, 861 P.2d 1299, 1310

(Kan. 1993) ("A negligence analysis is more appropriate than an application of strict liability in the

post-sale context.").

### B.  Punitive Damages

Because plaintiffs' tort claims fail as a matter of law, plaintiffs' claim for punitive damages

likewise fails.  *See Bisel v. Matco Tools*, 715 F. Supp. 316, 319–20 (D. Kan. 1989) (citing *Equitable*

*Life Leasing Corp. v. Abbick*, 757 P.2d 304, 307 (Kan. 1988)).

**IT IS THEREFORE ORDERED** that Defendant Ford Motor Company's Motion for

Summary Judgment (Doc. 99) is granted.

The case is closed.

Dated this 3rd day of August, 2016 at Kansas City, Kansas.

s/ Carlos Murguia_____
**CARLOS MURGUIA**
**United States District Judge**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ESTATE OF BETTY LOU McDERMED, Deceased, by and through DIANE L. McDERMED, ADMINISTRATOR, as her representative, and PAUL C. McDERMED AND GEORGIA LEE IOCCO, Individually, <br><br> Plaintiffs, <br><br> v. <br><br> FORD MOTOR COMPANY, a Delaware Corporation, <br><br> Defendant. | Case No. 14-2430-CM |

## MEMORANDUM AND ORDER

This case arose from a vehicle collision that occurred in 2012 in Topeka, Kansas between Emma Edwards, who was driving a 1999 Ford Contour, and Mykol Barksdale, who was driving a 1993 Toyota Camry. Decedent Betty McDermed was in the front passenger seat of Edward's Ford Contour. Plaintiffs brought a product liability claim against Ford Motor Company, alleging strict liability based on an alleged design defect and failure to warn. As discussed in the background below, the court ultimately granted defendant's motion for summary judgment. This matter is now before the court on plaintiffs' motions to: (1) reconsider, alter, amend, or relieve plaintiffs from the court's orders (Docs. 169; 170) and entry of judgment (Doc. 172) under D. Kan. Rule 7.3 and Federal Rules of Civil Procedure 59(e) and 60(b); and (2) grant a new trial under D. Kan. Rule 7.3 and Federal Rule of Civil Procedure 59(a)(1)(A) (collectively, the "motions for reconsideration"). (*See* Docs. 175; 175-1.) For the reasons stated below, the court denies plaintiffs' motions for reconsideration.

**I.     Background**

The majority of the background relevant to plaintiffs' motions for reconsideration was summarized in the court's memorandum and order filed on August 3, 2016. (*See* Doc. 169.)

> Defendant filed its Motion to Exclude the Expert Testimony of Plaintiffs' Expert Witness Mr. Shawn Parcells (Doc. 101) and Motion to Exclude the Expert Testimony of Plaintiffs' Expert Witness Mr. David McLellan (Doc. 102) (collectively, "defendant's motions to exclude plaintiffs' experts" [or "defendant's *Daubert* motions"]) on February 1, 2016. Under D. Kan. Rule 6.1(d)(1), plaintiffs' responses to defendant's motions to exclude plaintiffs' experts were due on February 15, 2016. On February 18, 2016, three days after plaintiffs' response deadline had passed, plaintiffs filed Plaintiffs' Motion for Leave for Additional Time to Respond to Defendant Ford's Motion to Exclude the Testimony of Plaintiffs' Expert Witness Mr. Shawn Parcells (Doc. 111) and Plaintiffs' Motion for Leave for Additional Time to Respond to Defendant Ford's Motion to Exclude Testimony of Plaintiffs' Expert Witness Mr. David McLellan (Doc. 112) (collectively, plaintiffs' "motions for leave to file responses to defendant's *Daubert* motions out of time").
>
> > Both motions for leave to file responses to defendant's *Daubert* motions out of time explained that plaintiffs' counsel filed the request after the response deadline passed because plaintiffs' counsel miscalculated the response deadlines by mistakenly applying the version of Fed. R. Civ. P. 6(d) that was effective in 2005. (*See* Doc. 111 at 1; Doc. 112 at 1.) Both motions for leave to file responses to defendant's *Daubert* motions out of time also requested extensions of the respective response deadlines up to March 14, 2016 because plaintiffs' counsel needed more time to review recently provided discovery that plaintiffs' counsel believed was pertinent to plaintiffs' claims. (Doc. 111 at 2; Doc. 112 at 2.) In Plaintiffs' Motion for Leave for Additional Time to Respond to Defendant Ford's Motion to Exclude the Testimony of Plaintiffs' Expert Witness Mr. Shawn Parcells, plaintiffs also stated that plaintiffs' expert Mr. Parcells had been unable to review the discovery until that point because he was recovering from complications from surgery. (Doc. 111 at 2.)
> >
> > Defendant oppose[d] plaintiffs' motions and ask[ed] the court to grant defendant's underlying motions as unopposed because of plaintiffs' failure to show excusable neglect in missing the deadline, particularly in light of plaintiffs' repeated failure to request extensions until after the deadlines passed and other late filings in this case and others. Plaintiffs did not file replies to defendant's responses. Plaintiffs ultimately filed their responses to defendant's motions to exclude plaintiffs' experts on March 14, 2016. (*See* Docs. [127,] 130 [].) Defendant substantively replied to the motions. (*See* Docs. 145, 147.)

(Doc. 169, at 2–3.)

On August 3, 2016, the court denied plaintiffs' motions for leave to file responses to defendant's *Daubert* motions out of time. (*Id.* at 9–10.) Under D. Kan. Rule 6.1(a), "[p]arties must file [a motion for an extension of time] before the specified time expires. Absent a showing of

-2-

excusable neglect, the court will not grant extensions requested after the specified time expires." D.

Kan. Rule 6.1(a).  The court acknowledged its preference "to rule on the merits of motions before it."

(Doc. 169, at 9.)  However, after weighing the four factors relevant to an excusable neglect analysis[1]—

most importantly the reason for the delay—the court found that plaintiffs failed to show that their

counsel's neglect in filing their motions to file out of time was excusable.  (Doc. 169, at 6–9.)  As a

result, the court denied plaintiffs' motions for leave to file responses to defendant's *Daubert* motions

out of time.  (*Id.* at 9–10.)

      The court then explained that under D. Kan. Rule 7.4(b),

> [a]bsent a showing of excusable neglect, a party or attorney who fails to file a
> responsive brief or memorandum within the time specified in D. Kan. Rule 6.1(d)
> waives the right to later file such brief or memorandum.  If a responsive brief or
> memorandum is not filed within the D. Kan. Rule 6.1(d) time requirements, the court
> will consider and decide the motion as an uncontested motion.

(*Id.* at 11 (quoting D. Kan. R. 7.4(b)).)  Because plaintiffs failed to file responsive briefs or

memorandums within the D. Kan. Rule 6.1(d) time requirements, the court considered defendant's

*Daubert* motions to exclude plaintiffs' experts as unopposed and granted the motions.  (*Id.*)

      On the same day, the court granted defendant's motion for summary judgment.  (Doc. 170, at

7.)  The court held that "[i]n light of the court's [exclusion of] plaintiffs' experts, plaintiffs' strict

liability claims fail[ed] as a matter of law because plaintiff [could not] provide admissible evidence

regarding the alleged defect or dangerous conditions and whether those alleged defects or dangerous

conditions caused the decedent's injuries or death."  (*Id.* at 5.)  On August 31, 2016, plaintiffs filed

their motions for reconsideration.

---

[1] In determining whether neglect is excusable, courts consider "all relevant circumstances surrounding the party's omission," including these factors: "[1] the danger of prejudice to the [opposing party], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith."  *Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 395 (1993).

## II.    Legal Standards & Discussion

D. Kan. Rule 7.3 and Federal Rules of Civil Procedure 59(e) and 60(b) govern plaintiffs'
motions for reconsideration. D. Kan. Rule 7.3 allows a party to file a motion asking a judge to
reconsider his or her prior order or decision. "Parties seeking reconsideration of dispositive orders or
judgments must file a motion pursuant to Fed. R. Civ. P. 59(e) or 60." D. Kan. Rule 7.3(a). "Parties
seeking reconsideration of non-dispositive orders must file a motion within 14 days after the order is
filed unless the court extends the time." D. Kan. Rule 7.3(b). Whether to grant a motion for
reconsideration is within the court's discretion.

### A.    Federal Rule of Civil Procedure 59(e) and D. Kan. Rule 7.3(b)

#### 1.    Legal Standard

Despite being governed by different rules, the grounds justifying an alteration or amendment of
a judgment under Rule 59(e) and the reconsideration of a non-dispositive order under D. Kan. Rule
7.3(b) are essentially the same: (1) an intervening change in law; (2) new evidence that was previously
unavailable; and (3) the need to correct clear error or prevent manifest injustice. *See Servants of the
Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (listing Rule 59(e) factors); D. Kan. Rule
7.3(b) (listing reconsideration factors); *Demster v. City of Lenexa*, 359 F. Supp. 2d 1182, 1184 (D.
Kan. 2005) (observing that the Rule 59(e) factors and D. Kan. Rule 7.3(b) factors are essentially the
same). "Thus, a motion for reconsideration is appropriate where the court has misapprehended the
facts, a party's position, or the controlling law. It is not appropriate to revisit issues already addressed
or advance arguments that could have been raised in prior briefing." *Servants of the Paraclete*, 204
F.3d at 1012.

Plaintiffs argue reconsideration is necessary to correct clear error or prevent manifest injustice.
(Doc. 175-1, at 1–2.) The Tenth Circuit defines "clear error" as "an arbitrary, capricious, whimsical,

-4-

or manifestly unreasonable judgment." *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1236 (10th Cir. 2001) (citation omitted). The Tenth Circuit has not precisely defined "manifest injustice" within the meaning of Rule 59(e), but courts in this district describe it as "direct, obvious, and observable error." *Hadley v. Hays Med. Ctr.*, No. 14-1055-KHV, 2017 WL 748129, at *2 (D. Kan. Feb. 27, 2017) (quoting *Tri-State Truck Ins. v. First Nat'l Bank of Wamego*, No. 09-4158-SAC, 2011 WL 4691933, at *3 (D. Kan. Oct. 6, 2011); *see also Grynberg v. Ivanhoe Energy, Inc.*, No. 08-cv-2528, 2010 WL 2802649, at *3 (D. Colo. July 15, 2010). A plaintiff seeking reconsideration to prevent manifest injustice can only prevail if he or she can demonstrate the injustice is "indisputable." *Tri-State Truck Ins.*, 2011 WL 4691933, at *3 (quoting *Shirlington Limousine & Transp., Inc. v. United States*, 78 Fed. Cl. 27, 31 (2007)).

### 2.    Discussion

Plaintiffs argue that the court committed clear error when it characterized defendant's *Daubert* motions as non-dispositive and denied plaintiffs' motions for leave to file responses to defendant's *Daubert* motions out of time. (Doc. 175-1, at 1–2.) Specifically, plaintiffs argue that defendant's *Daubert* motions were actually "dispositive motions," and therefore, plaintiffs should have had 21 days to respond under D. Kan. Rule 6.1(d), not the 14 days allowed for responses to non-dispositive motions. (*Id.*) They also argue that the court's order granting summary judgment was "interdependent and connected" with the orders excluding plaintiffs' experts and the entry of summary judgment against plaintiffs should be vacated and set aside. (Doc. 175, at 2.)

Plaintiffs impermissibly argue for the first time in their motions for reconsideration that defendant's *Daubert* motions were actually dispositive motions. Initially, plaintiffs' counsel acknowledged that he had missed the 14-day response deadline for non-dispositive motions. (*See* Doc. 111, at 1.) He explained that the motions for leave to file responses to defendant's *Daubert* motions

out of time were untimely due his "misapplication of the timing rules . . . ." (*Id.*)  Now, plaintiffs'

counsel argues that the motions for leave to file out of time were in fact timely under the 21-day time

period for responses to dispositive motions.  (Doc. 175-1, at 1–2.)

 A Rule 59(e) motion, however, "cannot be used to expand a judgment to encompass new issues

which could have been raised prior to the issuance of the judgment." *Sprint Nextel Corp. v. Middle*

*Man, Inc.*, 822 F.3d 524, 536 (10th Cir. 2016) (quoting *Steele v. Young*, 11 F.3d 1518, 1520 n.1 (10th

Cir. 1993)).  Even if plaintiffs had previously argued that defendant's *Daubert* motions were

dispositive, it would not have been clear error for the court to hold these motions were non-dispositive.

Under D. Kan. R. 6.1(d),

> [u]nless the court orders otherwise, the following time periods apply to the filing of
> responses and replies. . . .
>
> (1) *Non-dispositive motions*.  Responses to non-dispositive motions (motions other than
> motions to dismiss, motions for summary judgment, motions to remand, or motions for
> judgment on the pleadings) must be filed and served within 14 days.

D. Kan. Rule 6.1(d).  D. Kan. Rule 6.1(d)(1) clearly defines dispositive and non-dispositive

motions, and based on the plain language of the rule, defendant's *Daubert* motions were non-

dispositive motions.  Therefore, even if plaintiffs had initially argued that defendant's *Daubert*

motions were dispositive, it would not have been clear error for the court to apply the 14-day

non-dispositive time period.  Similarly, plaintiffs' motion for reconsideration to prevent

manifest injustice would fail as plaintiffs have not demonstrated a "direct, obvious, and

observable error" such that injustice is "indisputable."  *See Hadley*, 2017 WL 748129, at *2

(citations omitted).

 For these reasons, plaintiffs' Rule 59(e) and D. Kan. Rule 7.3(b) motions for

reconsideration of the court's orders denying plaintiffs' motions for leave to file responses to

defendant's *Daubert* motions out of time and granting defendant's *Daubert* motions (Doc. 169)

are denied. Plaintiffs present no additional arguments specific to the court's order granting summary judgment in favor of defendant (Doc. 170). Therefore, plaintiffs' Rule 59(e) and D. Kan. Rule 7.3(b) motions for reconsideration of the court's order granting defendant's motion for summary judgment (Doc. 170) and the court's entry of judgment in favor of defendant (Doc. 172) are also denied.

### B.    Federal Rule of Civil Procedure 60(b)

#### 1.    Legal Standard

Rule 60(b) outlines various grounds on which the court may relieve a party from a final judgment. *See* Fed. R. Civ. P. 60(b). "Rule 60(b) relief is extraordinary and may only be granted in exceptional circumstances." *Lebahn v. Owens*, 813 F.3d 1300, 1306 (10th Cir. 2016) (citation omitted). Similar to Rule 59(e), "a Rule 60(b) motion is not an appropriate vehicle to advance new arguments . . . that were available but not raised at the time of the original argument" or revisit issues already addressed. *Id.* Here, plaintiffs seek relief under Rule 60(b)(3) for fraud on the court and Rule 60(b)(6) for any other reason that justifies relief. (*See* Docs. 175, at 3; 175-1, at 8–10.)

Rule 60(b)(3) permits the court to relieve a party from final judgment due to "fraud . . . , misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). Consistent with the plain language of the rule, claims of fraud between the parties are typically brought under Rule 60(b)(3), "while claims of fraud on the court are brought as an independent action which is recognized" under Rule 60(d)(3). *Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281, 1291 (10th Cir. 2005). "However, courts have allowed parties to file a claim for fraud on the court under subsection (b)(3)." *Id.*

"Fraud on the court . . . is fraud which is directed to the judicial machinery itself . . . ." *Id.* (quoting *United States v. Buck*, 281 F.3d 1336, 1342 (10th Cir. 2002)). Fraud on the court requires

"proof of intent to deceive or defraud the court, through a deliberate scheme . . . ." *Id.* at 1290 (quoting

*Buck*, 281 F.3d at 1342.).

> Generally speaking, only the most egregious conduct, such as bribery of a judge or
> members of a jury, or the fabrication of evidence by a party in which an attorney is
> implicated will constitute a fraud on the court. Less egregious misconduct, such as
> nondisclosure to the court of facts allegedly pertinent to the matter before it, will not
> ordinarily rise to the level of fraud on the court.

*Id.* at 1291 (quoting *Weese v. Schukman*, 98 F.3d 542, 552–53 (10th Cir. 1996)).

Rule 60(b)(6) permits the court to relieve a party from final judgment for "any other reason that

justifies relief." Fed. R. Civ. P. 60(b)(6). "Rule 60(b)(6) relief is even more difficult to attain and is

appropriate only when it offends justice to deny such relief." *Zurich N. Am.*, 426 F.3d at 1293 (quoting

*Yapp v. Excel Corp.* 186 F.3d 1222, 1232 (10th Cir. 1999)). Motions for relief under clause (b)(6) are

"restricted to reasons other than those enumerated in" the other five clauses of Rule 60(b). *Id.* "Parties

moving for relief under Rule 60(b) cannot simply throw in subsection (6) without any new arguments

and expect to obtain a new trial." *Id.*

### 2.    Discussion

Plaintiffs' motions for reconsideration under Rule 60(b) fail to identify sufficient grounds for

relief. Plaintiffs seem to present two arguments for why Rule 60(b) relief should be granted. First,

plaintiffs invoke Rule 60(b) in conjunction with their Rule 59(e) argument that reconsideration is

necessary to correct clear error or prevent manifest injustice due to the alleged mischaracterization of

defendant's *Daubert* motions as non-dispositive by defendant and the court. (Doc. 175-1, at 2.)

Plaintiffs do not specify if they seek relief under Rule 60(b)(3) or (6) on this basis. (*Id.*) Second,

plaintiffs argue as an alternative ground for Rule 60(b)(3) relief that defendant committed fraud on the

court by filing a motion to strike plaintiffs' supplemental attachments to an expert witness report as

untimely and a motion to strike plaintiffs' supplemental Rule 26 disclosures as untimely and highly

prejudicial to defendant. (*See* Doc. 175-1, at 31.) Plaintiffs argue that these motions to strike constitute fraud on the court because the motions were "substantially frivolous and void of a clear showing of prejudice" and "were not made in good faith." (*Id.*)

This argument is insufficient. First, "[a]rguments that the court misapplied the law or misunderstood the movant's position are properly brought under Rule 59(e) but cannot be the basis for relief under Rule 60(b)." *In re Ebel*, No. 96-1190, 1997 WL 428574, at *6 (10th Cir. July 30, 1997). Therefore, plaintiffs' argument that the court committed clear error when it characterized defendant's *Daubert* motions as non-dispositive cannot form the basis of a Rule 60(b) motion. Second, allegedly filing frivolous motions to strike does not rise to the level of conduct that constitutes fraud on the court. Finally, plaintiffs do not present any new argument for why Rule 60(b)(6) relief should be granted, but rather generally invoke both Rule 60(b)(3) and (6) in their motions for reconsideration. (*See* Doc. 175, at 3.) Therefore, plaintiffs fail to present any basis for Rule 60(b)(6) relief, and plaintiffs' Rule 60(b) motions for reconsideration of the court's orders (Docs. 169; 170) and entry of judgment (Doc. 172) are denied.

### C.    Plaintiffs' Other Arguments

In plaintiffs' motions for reconsideration they also ask the court for relief on several additional bases. As discussed below, the alternative bases for relief are either not applicable or inadequate to support a motion for reconsideration.

#### 1.    Rule 59(a)(1)(A)

Plaintiffs ask the court to grant a new trial pursuant to Fed. R. Civ. P. 59(a)(1)(A). (Doc. 175, at 1.) Rule 59(a)(1)(A) allows the court, on a party's motion, to grant a new trial after a jury trial. Here, there was no jury trial, so Rule 59(a)(1)(A) is not applicable.

#### 2.    Inherent Equitable Power of the Court

Plaintiffs also ask that if the court determines that defendant's *Daubert* motions were non-dispositive and plaintiffs' counsel failed to show excusable neglect when failing to file responses within the required 14-day time period, that the court exercise its "inherent equitable power" and reconsider its "sanction . . . of dismissing [plaintiffs'] case with prejudice." (Doc. 175-1, at 26.) Specifically, plaintiffs ask the court to "conduct an Ehrenhaus-type hearing for the [c]ourt to reassess its sanction of dismissal . . . ." (*Id.* at 27.) The *Ehrenhaus* factors are a "non-exclusive list of sometimes-helpful criteria or guide posts the district court may wish to consider" when determining "whether to exercise its discretion to issue a dismissal sanction." *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1323 (10th Cir. 2011) (quoting *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992)).

The court notes that several of the *Ehrenhaus* factors were considered in the court's excusable neglect analysis. (*See* Doc. 169, at 6–9.) The *Ehrenhaus* factors include:

> (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for non-compliance; and (5) the efficacy of lesser sanctions.

*Ehrenhaus*, 965 F.2d at 921 (citations omitted). But the court did not dismiss plaintiffs' case as a sanction for plaintiffs' counsel's repeated failure to meet deadlines. Rather, the court granted defendant's motion for summary judgment based on the application of the procedural rules governing civil procedure in federal court. Because the court did not dismiss plaintiffs' case as a sanction, the *Ehrenhaus* factors are not applicable. Even if the court had dismissed plaintiffs' case as a sanction, it would have been within the court's discretion to do so.

### 3.   Res Judicata/Claim Preclusion

Finally, plaintiffs argue as an alternative ground for relief under Rule 59(e) that Magistrate Judge James's orders (1) denying defendant's motion to strike the untimely supplemental attachments to plaintiffs' expert witness report (Doc. 73); (2) denying two of defendant's motions to strike two of

plaintiffs' responses as untimely (Doc. 134); and (3) granting in part and denying in part defendant's motion to strike plaintiffs' untimely supplemental Rule 26 disclosures (Doc. 143) should "be considered on all issues as res judicata on all matters pertaining to discovery disputes between the parties . . . ." (Doc. 175-1, at 37.)

Res judicata, or claim preclusion, is not a ground for relief under Rule 59(e). Further, res judicata does not apply in this situation. Regardless of how Magistrate Judge James ruled on previous untimely filings by plaintiffs, the court conducts a new excusable neglect analysis each time a party fails to meet a deadline and asks the court to accept a late filing. The fact that the court previously allowed late filings has no impact on the court's excusable neglect analysis other than to demonstrate plaintiffs' counsel's pattern of missing deadlines.

**IT IS THEREFORE ORDERED** that plaintiffs' motions (Doc. 175) to: (1) reconsider, alter, amend, or relieve plaintiffs from the court's orders (Docs. 169; 170) and entry of judgment (Doc. 172) under D. Kan. Rule 7.3 and Federal Rules of Civil Procedure 59(e) and 60(b); and (2) grant a new trial under D. Kan. Rule 7.3 and Federal Rule of Civil Procedure 59(a)(1)(A) are denied.

Dated this 26th day of April, 2017, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**

# RULES

of the

## DISTRICT COURT

of the

## THIRD JUDICIAL DISTRICT

## OF KANSAS

## PREFACE

These District Court Rules supersede all other district court rules of the Third Judicial District. These rules are designed to reduce uncertainty, to provide for uniformity and to expedite litigation so far as uniformity and dispatch will aid the administration of justice. They are authorized by K.S.A. 60-267 and Kansas Supreme Court Rule 105 and should be read in conjunction with related statutes and "Rules of the Supreme Court relating to District Courts." K.S.A. 60-2702. New or revised rules will be promulgated from time to time as necessary. Current copies of the rules will be maintained for reference of counsel by the clerk of the court and in the county law library. Nothing herein is intended to contravene any statute or Supreme Court rule.

Cite these rules DCR 3.101 et seq.
Cite forms F3.101 et seq.

Date adopted: September 3, 1997            By order of the Judges of
Date effective: November 1, 1997           the Third Judicial District

These rules can also be found at www.shawneecourt.org

**Brief-Appendix "D"**

DCR 3.211

(Expert Witnesses)

1.     At the case management conference, or thereafter, the Court may limit the number of expert witnesses to be called by each party to avoid repetition and unnecessary expense.

2.     At the case management conference, or thereafter, the Court shall determine the time that identification of experts will be made by the parties.

3.     The parties shall comply with the provisions of K.S.A. 60-226(b)(6) with respect to the disclosure of expert testimony.  A written report signed by the witnesses shall be furnished to all parties of record which shall contain a complete statement of all opinions to be expressed and the bases and reasons therefore.  The disclosure shall include a current curriculum vitae setting out the qualifications of the expert and identifying all published and unpublished writings of the expert pertaining to the expert's opinions in the case.  The disclosure shall also identify and provide copies of all other data, writings or exhibits upon which the expert relies upon to support his or her opinions in the case.  Published writing may be identified by citation and need not be physically produced.  Copies of the expert's unpublished writings shall be timely furnished upon request [with the report].

4.     If the expert's opinions are based on calculations, and or mathematic statistic, economic or other assumptions, the expert's report shall disclose in the report all calculations and assumptions the expert made or relied upon in forming opinions.  The source of each assumption and or the manner in which each assumption was derived shall be specifically explained.  Any calculations shall be completely shown, except when done using a specific computer program, in

which case the specific program must be identified and each input made by the expert into the computer calculation shall be specifically set forth.

     5.    The parties shall disclose the hourly rates of retained expert witnesses at the time of disclosure and shall produce all billing statements or documents evidencing the amount of money billed and the amount of time the expert has spent providing services in the case prior to the disclosure.

     6.    At the status conference, or thereafter, the Court shall explore with counsel the possibility of using alternative means of discovery of the opinions of expert witnesses, however, the parties shall retain the right to depose opposing experts.

     7.    Treating physicians may be identified as experts without the necessity of a full disclosure as set forth in this rule.  However, if counsel anticipates using them for opinions other than causation, the nature and extent of this injury, and the reasonableness and necessity of past medical treatment and expenses, then full disclosure shall be made.

Revised:  5-21-08

DCR 3.212

(Interviewing Health Care Providers)


In any case in which the condition of a patient, as defined by K.S.A. 60-427(a)(1), is an element or factor of the claim or defense asserted by or on behalf of the patient, the attorneys representing the parties may interview any treating health care provider, as defined by K.S.A. 40-3401, or their employees without leave of the Court.

Upon the request of any party, the Court shall issue an Agreed Order for Inspection, Reproduction and Disclosure of medical records and protected health information.


Revised:    5-21-08

**Rule 105**

**LOCAL RULES**

(a) **Local Rules Permitted.** After consultation with the district magistrate judges, the district judges of a judicial district, by majority vote, may adopt rules that are:

    (1)   clear and concise;

    (2)   necessary for the judicial district's administration;

    (3)   consistent with applicable statutes; and

    (4)   consistent with — but not duplicative of — Supreme Court Rules.

(b) **Publication and Accessibility of Local Rules.** Local rules adopted under K.S.A. 20-342 must be:

    (1)   made accessible to the public; and

    (2)   posted on the Judicial Branch website.

(c) **Effective Date of Local Rules.** Local rules are effective upon filing with the clerk of the appellate courts and posting on the Judicial Branch website.

Appellate Case: 17-3105    Document: 01019848793    Date Filed: 07/31/2017    Page: 99

**CONTACT INFORMATION**

**The Kansas Supreme Court** Courts
301 SW 10th Avenue
Topeka Kansas 66612-1507

**Office of Judicial Administration**
**Telephone:** 785.296.2256
**Fax:** 785.296.7076
Email: info@kscourts.org

**Appellate Clerk's Office**
**Telephone:** 785.296.3229
**Fax:** 785.296.1028
Email: appellateclerk@kscourts.org

## *District Court Rules*

**Note:** To view and print some of these documents you need special software, available for free at
www.adobe.com. PDF documents will open in new window.

- 1st Judicial District (No Local Rules)
  Atchison and Leavenworth Counties
- 2nd Judicial District (PDF)
  Pottawatomie, Wabaunsee, Jackson,
  and Jefferson Counties
- 3rd Judicial District
  Shawnee County
- 4th Judicial District
  Franklin, Anderson, Coffey, and Osage
  Counties
- 5th Judicial District (PDF)
  Chase & Lyon Counties
- 6th Judicial District
  Miami, Linn, and Bourbon Counties
- 7th Judicial District
  Douglas County
- 8th Judicial District
  Marion, Morris, Geary, and Dickinson
  Counties
- 9th Judicial District (PDF)
  McPherson and Harvey Counties
- 10th Judicial District
  Johnson County
- 11th Judicial District (PDF)
  Crawford, Cherokee, and Labette
  Counties
- 12th Judicial District
  Cloud, Jewell, Lincoln, Mitchell,
  Republic, and Washington Counties
- 13th Judicial District
  Butler, Greenwood, and Elk Counties
- 14th Judicial District (PDF)
  Montgomery and Chautauqua Counties
- 15th Judicial District
  Sherman, Thomas, Sheridan, Cheyenne,
  Rawlins, Wallace, and Logan Counties
- 16th Judicial District (PDF)
  Gray, Ford, Kiowa, Meade, Clark, and
  Comanche Counties
- 17th Judicial District (PDF)
  Decatur, Norton, Graham, Phillips, Smith, and Osborne Counties
- 18th Judicial District
  Sedgwick County
- 19th Judicial District
  Cowley County

Appellate Case: 17-3105     Document: 01019848793     Date Filed: 07/31/2017     Page: 100

- 20th Judicial District (PDF)
  Stafford, Barton, Russell, Ellsworth, and Rice Counties
- 21st Judicial District
  Riley and Clay Counties
- 22nd Judicial District (PDF)
  Brown, Doniphan, Marshall, and Nemaha Counties
- 23rd Judicial District (PDF)
  Gove, Trego, Rooks, and Ellis Counties
- 24th Judicial District
  Edwards, Hodgeman, Lane, Ness, Pawnee, and Rush Counties
- 25th Judicial District (PDF)
  Scott, Wichita, Greeley, Hamilton, Kearny, and Finney Counties
- 26th Judicial District (PDF)
  Stanton, Grant, Haskell, Morton, Stevens, and Seward Counties
- 27th Judicial District (PDF)
  Reno County
- 28th Judicial District (PDF)
  Saline and Ottawa Counties
- 29th Judicial District (PDF)
  Wyandotte County
- 30th Judicial District (PDF)
  Sumner, Harper, Kingman, Barber, and Pratt Counties
- 31st Judicial District (No Local Rules)
  Allen, Neosho, Wilson, and Woodson Counties



# KADC

**Winter 2009**

# *Kansas Defense Journal*

Inside this issue of
*Kansas Defense Journal:*

The Time-Tested Use of      1
Ex Parte
Communications:
Interviewing A Plaintiff's
Health Care Providers as
a Vital Means of
Discovery
by Kyle J. Steadman

John Hayes: Leadership      1
by Example
by Sheryl F. French

President's Message        2
by David A. Rameden

KADC Amicus Committee   3
Report
by Todd N. Thompson

KADC Membership         4
Committee Update
by Shon Qualseth

Executive Director's        5
Report
by Scott Heidner

2008 KADC Award          5
Recipients

2008 KADC Annual         6
Conference Highlights

IADC Trial Academy         7

## THE TIME-TESTED USE OF *EX PARTE* COMMUNICATIONS: INTERVIEWING A PLAINTIFF'S HEALTH CARE PROVIDERS AS A VITAL MEANS OF DISCOVERY

### I.   Introduction

Attacks on the use of *ex parte* contact between defense counsel and a personal injury plaintiff's treating health care providers are not new. However, the arguments have evolved as plaintiffs' attorneys attempt to gain a stranglehold on the ability to communicate with a plaintiff's treating health care providers, *ex parte*. This article identifies common arguments used by the plaintiff's bar when challenging *ex parte* interviews and provides counter arguments to the same.[1]

### II.  "My client did not unconditionally waive the physician-patient privilege when she filed her personal injury lawsuit and she does not consent to defense counsel interviewing her physicians outside my presence."

Although plaintiffs' counsel commonly assert the above argument when challenging *ex parte* interviews, such argument wholly ignores the key exception to the physician-patient privilege for personal injury litigants. K.S.A. 60-427(d) states as follows:



**Kyle J. Steadman**
**Foulston Siefkin LLP**

There is <u>no privilege</u> under this section <u>in an action in which the condition of the patient is an element or factor of the claim or defense of the patient</u> or of any party claiming through or under the patient or claiming as a beneficiary of

*(Continued on page 8)*

## JOHN HAYES: LEADERSHIP BY EXAMPLE

by Sheryl F. French, CLA, *Gilliland & Hayes, P.A.*



*At the 2008 KADC Annual Conference, our association conferred its highest award, the William Kahrs Lifetime Achievement Award, on John Hayes of Gilliland & Hayes, P.A. Mr. Hayes is a founding member and past president (1971 to 1972) of the Kansas Association of Defense Counsel. He is a member of the American Board of Trial Advocates and International Association of Defense Counsel and is a Fellow of the American College of Trial Lawyers, the Kansas Bar Foundation and the American Bar Foundation. The following is a biographic summary of Mr. Hayes' professional accomplishments.*

John Hayes was born in Salina, Kansas but moved to Hutchinson at an early age and

was in Wesley Brown's Boy Scout Troop. After graduating from Hutchinson Community Junior College he attended Washburn University. He served his country with distinction during World War II in the U.S. Army as Captain, serving nearly four years with two and a half years overseas. Mr. Hayes returned to Washburn School of Law under the GI Bill and began his career as a trial attorney after graduating with an LLB in 1946. Mr. Hayes was admitted to practice in Kansas in 1946 and is also admitted to practice in Missouri and the United States Supreme Court.

The following are some remarks by John's long-time law partner and close friend, Bob Gilliland, at Bob's retirement in 2003:

*(Continued on page 18)*

*Amicus Committee Report (Continued from pg 3)*

damages. *Miller, et al. v. Johnson*, No. 99818, and *McGinnes, et al. v. Zayat*, No. 99896, are medical malpractice cases; the former involves removal of the wrong ovary, and the latter involves a wrongful death claim. Tim Finnerty of Wallace, Saunders, Austin, Brown & Enochs, Chartered will be authoring the amicus briefs for KADC. The Kansas Chamber of Commerce, the Kansas Medical Society, and the Kansas Hospital Association are also amici in both cases.

If you see Kyle, Lyndon or Tim, please thank them for their efforts. Kudos go to all members who write briefs for the KADC, but our authors this year get special recognition – Kyle and his firm for waiving the usual honorarium paid to authors, and Lyndon for putting the brief together and getting it filed in such a narrow time frame.

If any member has a request for amicus support, please contact me by phone at (785) 841-4554, or via e-mail at tlegaltodd@aol.com. ▲

*Ex Parte Interviews (Continued from pg 1)*

the patient through a contract to which the patient is or was a party.[2]

The statute makes clear that by filing a personal injury lawsuit, a plaintiff places her medical and mental conditions at issue. And a personal injury plaintiff cannot prevent her health care providers from disclosing her health information by asserting that such disclosure would violate the physician-patient privilege, as codified in K.S.A. 60-427. Significantly, the physician-patient privilege did not exist at common law. The physician and the patient could be compelled to testify regarding their interactions. The physician-patient privilege in Kansas is a creature of statute and must be strictly construed.[3]

Members of the plaintiff's bar sometimes argue that the Legislature's inclusion of "no privilege" in K.S.A. 60-427(d) is meaningless and that the privilege continues to exist upon the filing of a personal injury lawsuit. Such an interpretation of K.S.A. 60-427(d) – that

the physician-patient privilege continues to exist and as a result only a plaintiff has unfettered access to a personal injury plaintiff's physician – is inconsistent with the plain and unambiguous language of K.S.A. 60-427(d).

Moreover, the Kansas Code of Civil Procedure is to "be liberally construed and administered to secure the just, speedy and inexpensive determination of every action or proceeding."[4] A plaintiff's argument that the physician-patient privilege continues to exist after the filing of plaintiff's personal injury lawsuit is contrary to K.S.A. 60-102. Forcing one litigant to conduct formal discovery to gather non-privileged information from a fact witness does not encourage the just, speedy or inexpensive determination of a pending personal injury lawsuit. Such an interpretation affords a plaintiff with the right to contact a treating physician ex *parte* to schedule meetings; to informally interview the physician to determine if he or she has relevant information; to informally call to find out what a physician's unreadable written entry means in the plaintiff's medical record; to inform the physician of trial appearances; and to discuss the physician's trial testimony. Notably, if the plaintiff's bar's interpretation of K.S.A. 60-427(d) was accepted, defense counsel could not accomplish any of the foregoing tasks without the involvement, consent and supervision of plaintiff's counsel.

Allowing one party unsupervised access to a fact witness

*The physician-patient privilege in Kansas is a creature of statute and must be strictly construed.*



Multidisciplinary
Forensic Engineering,
Scientific and Technical
Consulting Services

*Engineering Systems Inc.*
*Providing Clear Answers*
*esi-website.com*

135 Professionals, 8 US Offices

**Contact ESI for such Specialty Areas as**
Accident Investigation & Reconstruction, Failure Analysis,
Cause & Origin Investigations, Lab and Testing Services,
Safety, Product Liability and Civil/Structural Issues

**Kansas City Office    (816) 471-7877**

*(Continued on page 9)*

*Ex Parte Interviews (Continued from pg 8)*

possessing non-privileged information and placing conditions on the another party's access to the same fact witness gives one party an unfair advantage and is not just. If defense counsel is prohibited from conducting *ex parte* interviews of a personal injury plaintiff's treating health care providers, defendants will be required to conduct expensive time-consuming and disruptive depositions. It is often impossible to know whether a health care provider has relevant information without speaking with the health care provider. A short informal interview may quickly rule out a health care provider as a witness. Many times it is difficult to read and understand the handwritten entries of physicians and other health care providers. Once again a brief interview with the physician can provide an explanation regarding what the physician's scribble on specific medical record is attempting to record.

If defense counsel's *ex parte* interviews are prohibited, defendants will be required to incur substantial and unnecessary transactional costs to determine whether a personal injury plaintiff's treating health care provider even has knowledge or information which is probative of the plaintiff's personal injury claim. The cost of a telephone call to a treating physician to informally gather non-privileged information will be replaced with court reporter deposition costs and increased attorney fees. Depositions are expensive for parties and often cause great disruption to a physician's schedule, which could result in delayed treatment for patients who need care. Informal interviews are a far superior method of making preliminary inquiries of a physician.

Another important counter-argument is to remind the court that it is common for a

> *The question is not the degree to which the physician-patient privilege survives the filing of a personal injury lawsuit.*

plaintiff to name multiple defendants in a personal injury case and a personal injury plaintiff may have multiple treating health care providers. A large number of defendants and health care providers can make it extremely difficult to coordinate and schedule depositions of a plaintiff's treating physicians at a time when plaintiff's attorney, defendants' attorneys and a plaintiff's physician are available. The pace of discovery will be reduced if depositions replace informal interviews. Defendants will incur additional attorney fees as their attorneys are forced to spend unnecessary time coordinating the schedules of multiple attorneys and physicians to find available times for the deposition of a physician. Such results are not what the Legislature intended when they enacted K.S.A. 60-427(d) and do not encourage the just, speedy and inexpensive determination of personal injury lawsuits, pursuant to K.S.A. 60-102.

**III.** "My client suffered a broken arm and that is the only condition that is at issue in her personal injury claim, so defendant should not be allowed to conduct *ex parte* interviews with any physician who treated my client for conditions unrelated to her broken arm."

The question is not the degree to which the physician-patient privilege survives the filing of a personal injury lawsuit. There is no physician-patient privilege "in an action in which the condition of the patient is an element or factor of the claim or defense of the patient."[5] As a result, none of a personal injury plaintiff's medical information is protected by the physician-patient privilege.

To state the obvious, every personal injury claim includes a claim for pain, suffering, and mental anguish. By making such claims, not only is the claimed physical injury an element of her personal injury claim, but so is her mental state before and after an injury causing event. And any treating health care providers potentially have information relevant to a plaintiff's non-economic damage claim.

**III.** "A Kansas District Court cannot authorize *ex parte* contact."

If a personal injury lawsuit is filed in one of the Kansas judi-



FOULSTON [|] SIEFKIN LLP

· ATTORNEYS AT LAW ·

*A Tradition for Legal Excellence since 1919*

*for more information contact:*

Scott Nehrbass

(913) 498-2100

Wichita          Overland Park          Topeka

*(Continued on page 10)*

*Ex Parte Interviews (Continued from pg 9)*

cial districts that currently have local rules permitting *ex parte* interviews of treating physicians, a plaintiff will likely argue that the court lacks authority to authorize *ex parte* interviews because the same are not a recognized means of discovery under the Kansas Rules of Civil Procedure and a district court is not allowed to create a new method of discovery by establishing a local rule which is inconsistent with the Kansas Code of Civil Procedure.[6]

Kansas Supreme Court Rule 105 encourages the creation of local rules and only requires that the local rules not be inconsistent with Kansas statutes or the Kansas Supreme Court Rules. A local rule allowing *ex parte* interviews of a personal injury plaintiff's treating physician by counsel is consistent with K.S.A. 60-427(d) and K.S.A. 60-102, and does not run afoul with any rule of the Kansas Supreme Court.

For example, the Third, Sixth, Eleventh, Fourteenth, Eighteenth and Twenty-Third Judicial Districts expressly allow *ex parte* discussions with treating physicians. *See* DCR 3.212 of the Third Judicial District (Shawnee County)[7]; Rule 14 of the Sixth Judicial District (Miami, Linn and Bourbon Counties)[8]; Rule 28 of the Eleventh Judicial District (Crawford, Cherokee and Labette Counties)[9]; Rule 38 of the Fourteenth Judicial District (Montgomery and Chautauqua Counties)[10]; Rule 208(a) of the Eighteenth Judicial District (Sedgwick)[11]; and Rule 213 of the Twenty-Third Judicial District (Ellis, Gove, Rooks and Trego Counties).[12]

Local rules authorizing *ex parte* contact do not create a new method of discovery. They simply recognize that no physician-patient privilege exists upon the filing of a personal injury lawsuit. If no privilege exists, nothing prevents the physician from engaging in ex

*parte* interviews with either litigant's counsel, if the physician consents to such informal discussions.

The Kansas Supreme Court has commented on the use of *ex parte* interviews of treating health care providers.[13] In *Wesley Medical Center v. Clark*, 234 Kan. 13, 20 (1983), the court stated that a physician, absent statutory authority, cannot reveal, *ex parte*, information protected from disclosure by the physician-patient privilege.[14] The *Wesley* court noted that the Kansas Code of Civil Procedure does not contain a statute that specifically authorizes *ex parte* interviews of witnesses, however, *ex parte* interviews of physicians are available when statutory authority is present.[15] K.S.A. 60-427(d) provides the "statutory authority" for *ex parte* interviews once a personal injury lawsuit is filed. A local rule acknowledging the "statutory authority" allowing *ex parte* contact with a plaintiff's treating health care providers is consistent with K.S.A. 60-427(d) and K.S.A. 60-102.

If a personal injury lawsuit is filed in any judicial district without a local rule, a plaintiff will argue that the court lacks the authority to enter an Order authorizing *ex parte* interviews and that the Kansas Code of Civil Procedure does not contemplate such interviews as a means of permissible discovery. This argument misses its mark for several reasons.

First, the "statutory authority" of K.S.A. 60-427(d) transforms a physician as a witness possessing information privileged from discovery to a witness possessing non-privileged information. Discovery of information known by a witness possessing non-privileged information can be accomplished without the necessity of using the means of formal discovery if the fact witness consents.

A Kansas district court has the authority to enter an order permitting all personal injury litigants to have equal access to fact witnesses based on its inherent authority to control discovery and to compel discovery under K.S.A. 60-237(a). K.S.A. 60-234(a) permits a defendant to request documents "which are in the possession, custody, or control of the party upon whom the request is served . . . ."

*(Continued on page 11)*

*Local rules authorizing ex parte contact do not create a new method of discovery. They simply recognize that no physician-patient privilege exists upon the filing of a personal injury lawsuit.*

---

**GILLILAND & HAYES, P.A.**
Proud Supporter of K.A.D.C.

John F. Hayes, founding member & past president
Gerald L. Green, past president
Tracy A. Cole, board member

*Ex Parte Interviews (Continued from pg 10)*

A personal injury plaintiff has control over her health information. A plaintiff routinely grants her counsel full access to her health information, including the ability to communicate with her physicians without her presence. Plaintiffs generally do not complain about allowing a defendant the ability to collect the plaintiff's medical records, but they object to allowing a defendant the right to communicate *ex parte* with a plaintiff's health care providers. A district court has authority pursuant to K.S.A. 60-237 to issue an order allowing *ex parte* interviews because the information sought is similar to documents responsive to a K.S.A. 60-234 request. If a district court can compel a plaintiff to produce medical records or sign an authorization allowing a defendant to independently collect a plaintiff's medical records, then certainly a district court has the authority to permit informal *ex parte* contacts with a personal injury plaintiff's treating health care providers.

> *If a district court can compel a plaintiff to produce medical records or sign an authorization allowing a defendant to independently collect a plaintiff's medical records, then certainly a district court has the authority to permit informal ex parte contacts with a personal injury plaintiff's treating health care providers.*

**IV. "HIPAA prohibits a defendant from interviewing my client's physicians *ex parte*."**

Plaintiffs routinely argue that the privacy rules of the Health Insurance Portability and Accountability Act (45 C.F.R. § 164.512) preempt Kansas law and therefore prohibit ex parte interviews. Clearly, the federal government has enacted a set of regulations commonly referred to as the HIPAA privacy rules. HIPAA affords litigants access to personal health information if certain procedural requirements are met.[16] The question is where do HIPAA's minimum required standards fit into Kansas' scheme governing informal discovery from those who may have protected health information.

The key to answering this question is under-standing that HIPAA's national minimum privacy standard as contained in 45 C.F.R. § 164.412(e) is a procedural safeguard only. "All that 45 C.F.R. § 164.512(e) should be understood to do, therefore, is to create a procedure for obtaining authority to use medical records in litigation. Whether the records are actually admissible in evidence will depend among other things on whether they are privileged."[17] The HIPAA privacy standard applicable to a defendant's motion to collect the protected health information of a plaintiff, including the ability to conduct ex parte interviews, provides in part:

(e) Standard: Disclosures for judicial and administrative proceedings.

(1) Permitted disclosures. A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:

(i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order; or

(ii) In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:

(A) The covered entity receives satisfactory assurance, as described in paragraph (e)(l)(iii) of this section, from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or

(B) The covered entity receives satisfactory assur-



**HPS**
PROCESS SERVICE
INVESTIGATIONS

nationwide coverage •
24/7 availability •
surveillance •
mobile notary •
document retrieval •
confirmed/verified locates •
and more! •

*Voted Missouri's #1 Process Server 2 years in a row!*

1669 Jefferson Street, Kansas City, MO 64108
816.842.9800 (ph) 816.842.9801 (fax)
www.hatfieldprocess.com • service@hatfieldprocess.com

*(Continued on page 12)*

*Ex Parte Interviews (Continued from pg 11)*

ance, as described in paragraph (e)(l)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.[18]

The "or" in the regulation, highlighted above, is significant and should not be overlooked. Disclosure may occur (i) in response to an order of the court, <u>or</u> (ii) in response to a subpoena, discovery request or other lawful process not accompanied by an order of a court. If it is one of the latter methods and there is not a court order, either of the conditions set forth in (A) or (B) also must be satisfied. Conversely, if there is an order from the court, neither of the conditions set forth in (A) or (B) need be satisfied. In other words, if defense counsel files a motion to collect the private health information of plaintiff which includes the ability to interview a plaintiff's treating physicians *ex parte*, defense counsel has satisfied the procedural requirements of HIPAA.

If a court authorizes such contact by issuing an order, there is no requirement whatsoever that a health care provider be given "satisfactory assurance" that reasonable efforts have been made to give the patient notice of the request. Nor is there a requirement that a health care provider be given "satisfactory assurance" that reasonable efforts have been made to get a qualified protective order. The minimum procedural privacy protection required by HIPAA is the existence of a court order, and nothing else.

*HIPAA expressly authorizes the disclosure of health information if it is done pursuant to a court order.*

The Kansas Attorney General has made the same conclusion. In Attorney General Opinion No. 2004-21 (July 7, 2004), the Kansas Attorney General made it clear that 45 C.F.R. § 164.512(e) provided procedural protections only which preempt any less stringent state law procedural protection, but which did not preempt the substantive waiver of privilege as set forth in K.S.A. 60-427, so long as the procedural safeguard was met. In analyzing 45 C.F.R. § 164.512(e), the Attorney General cited the commentary of Health and Human Services: "When a request is made pursuant to an order from a court or administrative tribunal, a covered entity may disclose the information requested without additional process."[19]

In discussing the specific issue of preemption, the Attorney General adopted the language of *Northwestern Memorial Hospital*[20] that "all that 45 C.F.R. § 164.512(e) should be understood to do . . . is to <u>create a procedure</u> for obtaining authority . . . ."[21] Thus, because 45 C.F.R. § 164.512(e) requires a court order, the Attorney General wrote, HIPAA's privacy standard preempts K.S.A. 60-427(c), but only "in relation to the <u>procedure</u> required before a patient's health information may be disclosed."[22] Therefore, once "HIPAA's procedural 'baseline'" has been reached, "a health care provider becomes authorized under [K.S.A. 60-427] to disclose health information."[23]

In other words, a fully compliant HIPAA order does not stand as a bar to the *ex parte* communications sought by a defendant in a personal injury action. In fact, HIPAA expressly authorizes the disclosure of health information if it is done pursuant to a court order. Health information is not disclosed to any greater extent because it is verbal. Indeed, the very definition of health information does not distinguish by form or source:

*Protected health information* means individually identifiable health information:

(1)    Except as provided in paragraph (2) of this definition, that is:

(i)    Transmitted by electronic media;

(ii)    Maintained in electronic media; or



**HfH**

HITE FANNING & HONEYMAN L.L.P.

ATTORNEYS AT LAW

For more information, call
F. James Robinson

SUITE 950
100 NORTH BROADWAY
WICHITA, KS ■ 67202-2209
TELEPHONE ■ 316-265-7741
FACSIMILE ■ 316-267-7803
WWW.HITEFANNING.COM

(Continued on page 13)

*Ex Parte Interviews* (Continued from pg 12)

    (iii)  Transmitted or maintained <u>in any other form or medium.</u>

(2)  Protected health information excludes individually identifiable health information in:

    (i)  Education records covered by the Family Educational Rights and Privacy Act, as amended, 20 U.S.C. 1232g;

    (ii)  Records described at 20 U.S.C. 1232g(a)(4)(B)(iv); and

    (iii)  Employment records held by a covered entity in its role as employer.

*Individually identifiable health information* is information that is a subset of health information, including demographic information collected from an individual, and:

(1)  Is created or received by a health care provider, health plan, employer, or health care clearinghouse; and

(2)  Relates to the past, present, or future physical or mental health or condition of an individual; the pr vision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual; and

    (i)  That identifies the individual; or

    (ii)  With respect to which there is a reasonable basis to believe the information can be used to identify the individual.[24]

The U.S. District Court for the District of Kansas has consistently found that HIPAA does not prohibit the continued use of *ex parte* interviews of a personal injury plaintiff's treating health care providers. In *McGee v. Stonebridge Life Insurance Company*,[25] defense counsel honored the procedural requirements of HIPAA and obtained an order allowing *ex parte* interviews with a decedent's health care providers. The court granted the motion, rejecting plaintiffs' argument that defendant should be required to gather the evidence pursuant to the Federal Rules of Civil Procedure. While the rules do provide for formal discovery procedures, they do not bar informal discovery. The court also cited the argument that *ex parte* communications should be permitted because of the increased time and expense involved in deposing various health providers. Ultimately, the *McGee* court granted a motion to gather protected health information, citing cases and public policy in support of the defendant's position.

In *G.A.S. v. Pratt Regional Med. Ctr., Inc.*,[26] Magistrate Judge Karen Humphreys permitted *ex parte* communications and ruled that HIPAA does not prohibit such communication. Pursuant to HIPAA rules, the defendant moved for a court order permitting access to the plaintiff's health information and allowing *ex parte* communications. The court first noted that the district has a "long-established rule permitting *ex parte* interviews with treating physicians." Next, the court addressed whether HIPAA prohibits *ex parte* contacts, stating: "The problem with plaintiff's objection is that a citation to HIPAA, standing alone, does not provide the court with sufficient grounds for denying defendant's request for an order to disclose medical information." The court rejected the objection's implicit suggestion that *ex parte* contacts are inherently wrong. Because the defendant satisfied the procedural requirements found in HIPAA, the objection was overruled and *ex parte* communications were permitted. Judge Humphreys affirmed her position on this issue by ruling that *ex parte* orders were appropriate in *Harris v. Whittington*.[27]

In *McCloud v. Board of Directors of Geary Community Hospital*,[28] Magistrate Judge Donald Bostwick found that under Kansas law the physician-patient privilege is waived when a plaintiff files a medical malpractice wrongful death suit. *Id.* The court ruled that defendants, by seeking an order from the court allowing the production of medical information and *ex parte* interviews with decedent's treating health care providers, complied with the HIPAA privacy regulations.

The sound reasoning set forth in these federal cases reflects the unambiguous statutory intent, good public policy, and basic judicial fairness underlying the approval of *ex parte* communications to give the parties

*The U.S. District Court for the District of Kansas has consistently found that HIPAA does not prohibit the continued use of ex parte interviews of a personal injury plaintiff's treating health care providers.*

(Continued on page 14)

*As officers of the court, plaintiff's and defense counsel have a duty to refrain from pressuring or coercing fact witnesses during ex parte interviews.*

*Ex Parte Interviews (Continued from pg 13)*

equal access to fact witnesses.

**V. "*Ex parte* interviews are contrary to Kansas public policy."**

The proponents of ending Kansas' long standing tradition of allowing *ex parte* interviews with a personal injury plaintiff's treating health care providers infer that defense counsel have used *ex parte* interviews with improper motives to influence these fact witnesses to support defendants and not to testify in a manner which supports a plaintiff's personal injury lawsuit. The proponents offer no evidentiary proof when calling into question the ethical obligations of their colleagues within the personal injury defense bar.

The proponents further argue that without formal discovery there are no checks and balances policing the defense bar during their *ex parte* interviews with fact witnesses. This argument ignores the fact that the plaintiff's bar can explore with a plaintiff's treating physicians during their *ex parte* interviews the scope of defense counsel's interview with the treating physician and bring improprieties to the trial court's attention. Personal injury plaintiff and defense attorneys are mindful that their opponent can discover the scope of his adversary's communication with a treating health care provider. As to the possibility of intentional misconduct during *ex parte* interviews, courts should not add to the paranoia and should avoid speculating about or imputing such sinister motives to plaintiff's counsel, defense counsel or to a plaintiff's treating physician. As officers of the court, plaintiff's and defense counsel have a duty to refrain from pressuring or coercing fact witnesses during

*ex parte* interviews. Besides the inherent duties of all counsel to behave ethically, a proper check and balance is afforded by opposing counsel's permitted inquiry into the substance of any *ex parte* communication. *Ex parte* interviews of fact witnesses are an efficient method of discovery for plaintiffs and defendants and to prohibit the tool smacks of throwing out the baby with the bath water.

The plaintiff's bar's public policy argument is effectively countered by directing a court's attention to K.S.A. 60-427(d). The true public policy is that when a plaintiff files a personal injury lawsuit, any statutory privilege which could prevent a treating physician from disclosing confidential information is extinguished. The Kansas Legislature spoke and decided that the privilege would expire when a personal injury plaintiff files suit. Attempts by the plaintiff's bar to amend K.S.A. 60-427 to eliminate *ex parte* interviews have failed.

In 1992, the Kansas Trial Lawyers Association (now the "Kansas Association for Justice") attempted to amend K.S.A. 60-427(d) by prohibiting *ex parte* communications between a personal injury plaintiff's treating physician and a defendant or defense counsel.[29] The requested amendment sought to prohibit "oral or written communication between a physician and an adverse party or the party's attorney outside the presence of the patient or the patient's attorney without specific written authorization by the patient."[30] The legislative attempt to amend K.S.A. 60-427(d) and prohibit informal discovery failed.

In 2008, a Senate Bill was introduced which in part sought to amend K.S.A. 60-427(d) by providing that "except for opinions dealing with the medical standard of care and causation" that no physician-patient privilege would exist after the filing of a personal injury lawsuit.[31] The KADC opposed the amendment, arguing that it would render K.S.A. 60-427(d) meaningless because an essential element in every personal injury case is causation and the proposed amendment would thwart the legislative intent of K.S.A. 60-427(d), which was to afford all

*(Continued on page 15)*

# Metropolitan
## COURT  REPORTERS

*Videography*        *Videoconferencing*

- 25 Full-Time Reporters
- Videoconferencing
- Video-Text Synchronization
- Full Litigation Support

1-800-748-7511     FAX (913) 317-8850
(913) 317-8000
www.metropolitanreporters.com
E-Mail: mcr@metropolitanreporters.com

*Ex Parte Interviews (Continued from pg 14)*

litigants the same unfettered access to facts relevant to a plaintiff's personal injury claim. Also, standard of care and causation opinions do not meet the definition of "confidential communication" as defined by the Kansas physician-patient privilege statute. Finally, the KADC pointed out that such an amendment would allow a plaintiff to waive the privilege when she believed her physician's standard of care or causation opinions aided her claims and to assert the privilege to prevent her physician from providing opinions unfavorable to her case.[32] The Senate Judiciary Committee opposed the proposed amendment to K.S.A. 60-427(d).[33]

The fact that the Legislature has refused to amend K.S.A. 60-427(d) multiple times to eliminate the statutory authority for *ex parte* interviews is persuasive that *ex parte* interviews do not violate Kansas public policy.

Another strong public policy argument favoring *ex parte* interviews is that all litigants should have equal access to the evidence and fact witnesses. Why should a plaintiff's attorney be afforded preferential access to a fact witness? If *ex parte* interviews between defense counsel and a treating physician create an environment for potential misconduct, cannot the same argument be made regarding *ex parte* interviews between plaintiff's counsel and a treating physician?

### VI.  Conclusion

We should all expect continued attacks on the time-tested use of *ex parte* interviews. To counter such attacks, defense counsel must continue to direct the court's attention to the plain and unambiguous language of K.S.A. 60-427(d).  The statute provides the statutory authority for the continued use of this economical and efficient means of discovery.  Neither party to a personal injury lawsuit should be allowed to exercise sole ownership over a fact witness.

*All litigants should have equal access to the evidence and fact witnesses.*

The author credits current and former members of KADC who contributed to this article by sharing their work product on this topic in years prior. Specifically, Nancy Ogle of Ogle Law Office, LLC and Jim Hernandez of Woodard, Hernandez, Roth & Day, LLC deserve credit and recognition for previously sharing their briefing on *ex parte* communications.  Certain portions of this article were published in "*Ex Parte* Interviews With Health Care Providers," authored by Caleb Stegall in the Spring 2005 edition of the KADC *Legal Letter*, which offers an expanded analysis of HIPAA's correlation with *ex parte* communications.  KADC members can access this article and others online at www.kadc.org.

1. The debate over *ex parte* interviews of treating physicians will be taken up by the Kansas Court of Appeals in the case of *Foster v. Klaumann*, 08-100286-A.  The KADC was granted leave to file an *amicus* brief and filed the same on January 21, 2009.  Our *amicus* brief addressed whether *ex parte* communications between a party's counsel and a personal injury plaintiff's treating physician should continue to be viewed as a proper, valuable means of discovery, supported in the State of Kansas.

2. K.S.A. 60-427(d) (emphasis added).

3. *Bryant v. Hilst*, 136 F.R.D. 487, 490 (1991) (citing *Armstrong v. Topeka Ry. Co.*, 93 Kan. 493, 144 P. 847 (1914); 1 Gard's Kansas C.Civ.Proc.2d Annot. 60-427 (1979)).

4. K.S.A. 60-102.

5. *State v. Campbell*, 210 Kan. 265, 281 (1972).

6. Kansas Supreme Court Rule 105.

7. DCR 3.212 states in relevant part: "In any case in which the condition of a patient, as defined by K.S.A. 60-427(a)(1), is an element or factor of the claim or defense asserted by or on behalf of the patient, the attorneys representing the



OFFICES    Kansas City Metropolitan Bar Association   KCMBA Affinity Partner

Headquarters
711 North 11th Street
St. Louis, MO 63101

Columbia
3610 Buttonwood Dr
Columbia, MO 65201

Springfield
1911 S. National Ave
Springfield, MO 63804

Overland Park
7500 College Blvd
Overland Park, KS 66210

Jefferson City
3452 West Truman Blvd
Jefferson City, MO 65109

Rolla
901 North Pine Street
Rolla, MO 65402

Kansas City
2300 Main Street
Kansas City, MO 64108

Cape Girardeau
3095 Lexington
Cape Girardeau, MO 63701

800.280.3376 • FAX 800.315.4319    midwestlitigation.com

*(Continued on page 16)*

*Ex Parte Interviews (Continued from pg 15)*

parties may interview any treating health care provider, as defined by K.S.A. 40-3401, or their employees without leave of court."

8.  Rule 14 states in relevant part: "In any case in which the condition of a patient, as defined by K.S.A. 60-427(a)(1), is an element or factor of the claim or defense asserted by or on behalf of the patient, the attorneys representing the parties may interview any treating health care provider, as defined by K.S.A. 40-3401, or their employees without leave of the court."

9.  Rule 28 states: "When the physician-patient privilege has been waived or does not exist under the terms of K.S.A. 60-427, lawyers may interview treating physicians outside the presence of the patient or opposing counsel, providing the physician is supplied with a written consent by the person holding the privilege or by a qualified Protective Order of this court that incorporates the applicable provisions of HIPPA (sic) (42 U.S.C. 1320d et seq.) and regulations promulgated pursuant to HIPPA (sic).  Lawyers may not interview any expert witness who has been retained or specially employed by another party in anticipation of litigation or preparation for trial with out consent of counsel or order of the court."

10. Rule 38 states: "When the physician-patient privilege has been waived or does not exist under the terms of K.S.A. 60-427, lawyers may interview treating physicians outside the presence of the patient or opposing counsel, providing the physician is supplied with written consent by the person holding the privilege or by an order of the court authorizing the interview, providing the treating physician consents to the interview.  Lawyers may not interview any expert witness who has been retained or specially employed by another party in anticipation of litigation or preparation for trial without consent of counsel or order of the court."

11. Rule 208(a) states in relevant part: "Lawyers have a right to interview a treating physician once the physician-patient privilege is waived by the filing of a lawsuit, provided the physician is supplied with a written consent waiving the privilege by the person holding the privilege or by order of the Court.  A treating physician may be interviewed outside the presence of parties or other counsel provided the treating physician consents to the interview."

12. Rule 213 states: "In any case in which the condition of a patient, as defined by K.S.A. 60-427(a)(1), is an element or factor of the claim or defense asserted by or on behalf of the patient, the attorneys representing the parties may interview any treating health care provider, as defined by K.S.A. 40-3401, or their employees without leave of court, but only with the consent of the person or persons to be interviewed."

13. *Wesley Medical Center v. Clark*, 234 Kan. 13, 20 (1983).

14. *Id.*

15. *Id.*

16. 45 C.F.R. § 164.512(e).

17. *Northwestern Mem'l Hosp. v. Ashcroft*, 362 F. 3d 923, 925-26 (7th Cir. 2004) (later describing 45 C.F.R. § 164.512(e) as having a "purely procedural character").

18. 45 C.F.R. § 164.512(e)(I)(i) & (ii) (emphasis added).

19. 65 Fed. Reg. 82529 (Dec. 28, 2000), Health and Human Services Commentary on HIPAA final privacy rule (*quoted in* Atty. Gen. Op. No. 04-21 at 7).

20. *Northwestern Mem'l Hosp. v. Ashcroft*, 362 F. 3d 923, 925-926 (7th Cir. 2004) (later describing 45 C.F.R. § 164.512(e) as having a "purely procedural character").

21. Atty. Gen. Op. No. 2004-21 at 9 (emphasis added).

22. *Id.* at 11 (emphasis added).

23. *Id.*

24. 45 C.F.R. § 160.103 (emphasis added).

25. 2006 U.S. Dist. LEXIS 62836, No. 05-4002-JAR (D. Kan. 2006).

26. 2006 U.S. Dist. LEXIS 95416, No. 05-1267-JTM (D. Kan. 2006).

27. 2007 WL 164031, No. 06-

**Polsinelli Shughart** bc

Proud supporter of the
**Kansas Association of Defense Counsel**

Tony Rupp, past KADC President  |  Amy Morgan, Board Member
polsinelli.com

The choice of a lawyer is an important decision and should not be based solely upon advertisements.

*(Continued on page 17)*